## NELLIE B. TUBBS v. DWELLING-HOUSE INSURANCE COMPANY.

*Fire insurance—Application—Mistake in representations—Knowl-
edge of agent—Proofs of loss—Practice in circuit court—
Taking documents to jury-room—Judgment—Error
without prejudice.*

1. Where an agent whose authority is confined to soliciting appli-
cations for insurance, which provide that the company shall
not be bound by any act done or statement made by or to any
agent or other person not contained in the application, is *cor-
rectly* informed of the amount unpaid on a land contract under
which the applicant holds, and by *mistake* or otherwise inserts
a *less* sum in the application, which he fills out, and the
applicant without carelessness on his part, and in reliance upon
the acts and conduct of the agent in preparing the application,
signs it without reading it or having it read to him, and without
out notice or knowledge of such misrepresentation, which

application is not attached to the policy, the company cannot avoid liability under a provision of the policy that by its acceptance the assured covenants that the application shall form a part of the policy, and a warranty by the assured. *Crouse v. Insurance Co.*, 79 Mich. 249.[1]

2. Failure to make proofs of loss within 30 days, as provided for in an insurance policy, will only operate to postpone the right of action of the assured until the proofs are supplied, where there is no limitation in the policy as to the time within which suit must be brought, nor provision for forfeiture in case proofs are not made within the 30 days.

3. Including articles not owned by the assured in his proofs of loss on the supposition that they are covered by the policy, and without fraudulent intent on his part, will not invalidate the policy.

4. Where exhibits have been fully proven and admitted in evidence, and their authenticity is unquestioned, and there is no testimony to impeach their contents, it is within the discretion of the trial court to allow them to be taken to the jury-room, although objection is made.

5. Where the conceded loss under a clause of an insurance policy exceeds the sum insured thereunder to an amount greater than the value of certain articles which the court instructs the jury plaintiff can recover for under said claim, the error, if one is committed, is not prejudicial to the defendant.

6. Where in an insurance case the jury disregarded the instruction of the court limiting the loss recoverable under a certain clause of the policy to a sum less than that covered by the clause, and the jury rendered a verdict for the greater amount, and no application was made to the trial court to correct the error, the judgment will not be reversed, but will be corrected by making the necessary deduction.

Error to Tuscola. (Beach, J.) Argued January 16, 1891. Decided February 27, 1891.

*Assumpsit.* Defendant brings error. Judgment modified and affirmed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett,* for appellant.

---

[1] See *Russell v. Insurance Co.*, 80 Mich. 407 (head-notes 2, 3); *Cook v. Insurance Co.*, 84 Id. 12; *Gristock v. Insurance Co.*, Id. 161; *Hoose v. Insurance Co.*, Id. 309; *Insurance Co. v. Reed*, Id. 524.

*D. B. Richardson* (*C. F. Collier*, of counsel), for plaintiff.

[The points of counsel are so fully stated in the opinion, and the authorities so fully discussed in this case, and in the cases cited by the Court and in the foot-note, that a summary of the briefs of counsel is omitted.—REPORTER.]

McGRATH, J. This is an action upon a five-year policy of insurance, issued by defendant May 14, 1887,—$100 on plaintiff's frame dwelling-house; $700 on household furniture, beds and bedding, wearing apparel, provisions and stores, piano, organ, and sewing-machine, in said dwelling; $60 on frame ice and milk house; and $50 on dairy furniture, provisions, and stores,—situate on a farm owned by plaintiff. The application sets forth that applicant's interest in the property was under contract with one Lacey, who held the title, and that the property was incumbered with the sum of $2,000 due said Lacey. The application contained the following printed provision:

"I hereby agree that * * * the foregoing shall be deemed and taken to be promissory warranties, running during the entire life of said policy. * *. * The company shall not be bound by any act done or statement made by or to any agent or other person which is not contained in this, my application."

The policy refers to the application on file in the office of the company, and provides that the loss is— .

"To be paid 60 days after notice and due and satisfactory proof of the same shall have been made by the assured, and received at the company's home office at Boston, Mass., in accordance with the terms and provisions of this policy hereinafter named."

The policy contains the following provision:

"By the acceptance of this policy the assured covenants

that the application herefor shall be and form a part hereof, and a warranty by the assured, and the company shall not be bound by any act or statement made to or by any agent unless inserted in this contract. * * * Any fraud or attempt to defraud or deceive on the part of the assured, and any misrepresentation in the proofs or examination as to loss or damage, shall forfeit all claims under this policy. * * * All persons having a claim under this policy shall forthwith give written notice of the loss or damage, and within thirty days furnish proofs thereof, signed and verified by the claimants;" and then follows a statement as to what the proofs shall contain.

Fire occurred March 27, 1889, and the company refused to pay the loss, because:

1. The representation made in the application as to the incumbrance upon the property was untrue, in that the amount thereof was $3,000, instead of $2,000, as stated in the application.

2. The proofs of loss were not furnished until May 25, more than 30 days after the loss occurred.

3. The proofs of the loss embraced property that did not belong to the assured, and therefore all claims under the policy were forfeited.

It appeared upon the trial that one Taylor, an agent of the defendant, solicited the insurance, and filled out the application[1]; that plaintiff did not read the application, but signed it when presented by Taylor; that Taylor asked her how the land was owned, and she told him that she had bought it on land contract from one Lacey; that the purchase price was $3,500, and that she had paid $500 down, and kept the interest up. No testimony was offered by the defendant, and plaintiff's testimony is uncontradicted. To the proofs of loss was attached plaintiff's affidavit, which contained the following clauses:

"That the annexed and foregoing schedule of articles is a true list of the articles insured under said policy

---

[1] Taylor was a soliciting agent, and had no power to issue policies.

which were burned and totally destroyed by said fire; that the same are a total loss to deponent; that said property insured under said policy, and burned by said fire, as aforesaid, was free and clear from incumbrance, lien, or levy; and that claimant's title thereto is the absolute ownership thereof. * * * * * * *
"That the farm and dwelling-house and ice-house were purchased by assured upon contract, which said contract is held and owned by William Lacey, of Holly, Mich., upon which there still remains unpaid three thousand dollars."

The proofs of loss contained an itemized list of articles lost by the fire, with the present value of each article. It included some of her husband's wearing apparel, and some of the apparel of an adopted son. Plaintiff testified that she was told by Taylor to include in the list all articles burned in the house, and that she supposed that her husband's wearing apparel was covered by the policy.

1. Upon the first question raised by the defendant, the court instructed the jury as follows:

"One fact for you to determine there is, whether the plaintiff, Mrs. Tubbs, correctly informed the agent as to the actual amount of incumbrance, or the amount still due, upon the premises. You will determine that fact. If you find that she did correctly state it, you will determine the fact whether the agent understood it,—whether he inserted the amount in the policy understandingly or not. You will also determine whether it was inserted by mistake. Then I say to you, as a matter of law, that if she correctly informed him as to the amount, and the statement in the application, that the incumbrance was $2,000, was inserted by the agent knowing the true amount, or through mistake, and the application was presented to her to sign, and she was requested to sign it, and didn't read it through, understanding by the acts and conduct of the agent that the application correctly stated the answer which she had made, and she so signed it, and with that impression, derived from the acts and conduct of the agent, then the claim of fraud could not be maintained here, and the policy would not be void on that account. But if she did understand the amount that

was stated in the application herself, and the agent had misunderstood the statement, didn't understand it, or made a mistake in regard to it, as I say, if she understood the amount which was inserted in the application, the agent not having got the answer correctly, through deafness, or any other reason, and she knew the amount stated in the application to be wrong, and signed the application so knowing, then that would avoid the policy. Now, there is a question of fact for you to determine as to how that amount came in the application, and what the parties knew and understood about it.

" I will say, further, if she had an opportunity to read that application, and neglected to do so of her own motion, of her own will, not misled by the acts or conduct of the agent, or lulled into silence as to what it contained by his acts and conduct, in preparing the application and all the circumstances surrounding the preparing of it; that it was a mere act of carelessness or neglect on her own part,—then, under those circumstances, the policy would be void, and she could not recover in this case."

This question has been frequently before this Court, and there was no error in the instruction given. See *Crouse v. Insurance Co.*, 79 Mich. 249. See, also, *Insurance Co. v. Brodie*, 52 Ark. 11 (11 S. W. Rep. 1016), and cases cited. The only distinction between the case cited and this is that the application here contains a restriction upon the agent's power, which is as follows:

"The company shall not be bound by any act done or statement made by or to any agent or other person which is not contained in this, my application."

But the act done by the agent was a misrepresentation made by the agent in the application itself at the inception of the contract, and the application was not attached to the policy, but was retained by the company.[1] It had never been read by the plaintiff. She therefore had no notice of the misrepresentation, or of the restric-

---

[1] See *Insurance Co. v. Reed*, 84 Mich. 524, where the application was attached to the policy.

tion upon the agent's powers. The rule laid down in the cases cited, and supported by the clear weight of authority, is that the knowledge of the agent is the knowledge of the company, and that notice to the agent is notice to the company. Not only was the agent correctly informed as to the amount of the incumbrance, but he knew that the plaintiff had not read the application, and consequently did not know of the limitation upon the agent's powers. The signing of the application by plaintiff is no more conclusive upon plaintiff as to the printed clause limiting the powers of the agent than it is as to the misrepresentation with reference to the incumbrance. It would be manifestly absurd to say that a misrepresentation of a material fact in the application does not invalidate a policy of insurance, where the application is not read to or by the applicant, and the misrepresentation was inserted by an agent of the company without the knowledge of the applicant, and contrary to her instructions, although she signed it, yet that by reason of a printed clause in the application, inserted by the company without the knowledge of the applicant, and to which her attention was not called, the misrepresentation would invalidate the policy, because the application was signed by the assured. As is well said in *Insurance Co. v. Wilkinson*, 13 Wall. 222:

"The powers of the agent are *prima facie* co-extensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals."

Again, plaintiff did not seek to avoid any requirement of the contract by reason of any assurance or license given her by the agent, nor does she seek to excuse the non-performance of any condition by setting up any matter communicated by her to the agent. She insisted that she gave to the agent the correct amount of the incum-

brance, and that he (not she) misstated the amount, and the company sets up the act of its own agent to defeat the policy. The question here is not one of the authority or power of the agent, but it is one of his care or good faith in doing an act which the company does not prohibit, and which he usually performs.

It may be urged that the policy contained a like restrictive clause, and that plaintiff is properly chargeable with a knowledge of what is in the policy. This may be true, but the application was not attached to the policy, but was filed away in the office of the company, and was not produced until after the loss; hence plaintiff had no knowledge of the act of the agent complained of until that time. As indicating her entire good faith, in her proofs of loss she sets forth that there *still remains* unpaid upon this incumbrance the sum of $3,000.

2. The second objection is that proofs of loss were not made within the 30 days provided by the policy. There is no limitation in the policy here as to the time within which suit must be brought, nor does it contain any provision that the failure to furnish proofs of loss within the 30 days shall work a forfeiture. The policy simply provides that—

"Until such proofs, plans, specifications, and certificates shall be furnished, and such examination had, * * * the claim shall not be due or payable."

The failure to make the proofs within the 30 days did not operate as a forfeiture, but only postponed the right of action till they were supplied. *Insurance Co. v. Downs*, (Ky.) 13 S. W. Rep. 882.

3. The third objection is that plaintiff, in her proofs of loss, made claim for the loss of property of which she was not the owner. Plaintiff testified that she included some articles in the list that were not her property,

because Taylor told her to make a list of the articles burned; that she had no intention of defrauding the company, and supposed they were included in the policy covering clothing and wearing apparel. It is well settled that, if no fraud was intended by the assured, the policy will not be invalidated on that ground. 4 Field, Lawy. Briefs, 311, and cases cited. This question of plaintiff's intent was fairly submitted to the jury under proper instructions from the court, and they have found that no misrepresentations were intentionally made.

4. One of the errors assigned is the action of the court in permitting the jury, upon retiring, to take with them the policy, the application, and the proofs of loss, against defendant's· objection.[1] It will be remembered that no testimony was offered on the part of the defendant. The papers taken to the jury-room were exhibits fully proven, and concerning the contents of which there was no dispute. To the proofs of loss was attached a list of the articles burned, with the value of each article as sworn to. The jury were instructed by the court to strike from this list and exclude certain articles which belonged to the husband, and, as an aid to them in so doing, they had before them the list. It was held in *Bethel v. Linn,* 63 Mich. 464, that, where the articles in controversy were so numerous that the jury would not be likely to carry them in mind, it was not error to permit a list of the articles to be taken to the jury-room.

The rule laid down in *Millar v. Cuddy,* 43 Mich. 273, namely, that it was not error to permit a computation made by plaintiff's attorney, showing the amount claimed to be due, to be taken to the jury-room, has been modified by subsequent decisions.

1. It has been held to be reversible error to permit the

---

[1] See *Harroun v. Railway Co.*, 68 Mich. 208.

defendant's requests to charge which were marked "Given" to be taken to the jury-room. *Hewitt v. Railroad Co.,* 67 Mich. 61, 79.

2. In re *Foster's Will,* 34 Mich. 24, the court refused to allow the will to be taken by the jury, and this Court held there was no error.

3. In *Canning v. Harlan,* 50 Mich. 323, the court refused to allow a receipt to be taken by the jury, and this Court refused to disturb the judgment.

4. In *Bulen v. Granger,* 63 Mich. 331, the court allowed a due-bill to be taken by the jury, and this Court affirmed the judgment, saying, however, that the general rule is against the practice where objection is made, but, inasmuch as the defendant was not prejudiced, they should not interfere.

5. In the case of *Chase v. Perley,* 148 Mass. 289 (19 N. E. Rep. 398), the trial court refused to permit certain receipts to go to the jury-room, and the supreme court held that it was not error, putting it upon the ground that the receipts 'were not put in evidence.

The true rule seems to be that, where exhibits have been fully proven and admitted in evidence, and their authenticity is unquestioned, and there is no testimony to impeach their contents, it is within the discretion of the trial court to allow them to be taken to the jury-room, although objection is made; and there was no error in permitting the papers here to be taken by the jury.

5. An exception is taken to the charge of the court that the plaintiff could recover for the wearing apparel of the adopted son, who was a member of the family. We cannot see how the defendant was prejudiced by this instruction. The wearing apparel of the boy included in this list was one pair of rubber boots, one woolen shirt, one pair cuff buttons, one pair celluloid cuffs, one collar, one suit of boy's clothes, and one new hat, aggregating in value about $25. These articles, if insured at all, were insured under the $700 clause in the policy, and the loss under this clause was somewhere between $1,000 and $1,100.

6. It appears by the record that the total amount of the insurance was $910, of which $50 was on dairy furniture, provisions, and stores, etc. The court instructed the jury that the only loss proven under this clause was the sum of $1.37, but the jury disregarded this instruction, and brought in a verdict for the full amount of the policy.[1] This was error, and it was the duty of the court to have corrected it; but it does not appear that either party made any application to the trial court to make such correction, and, not having done so, we do not feel called upon to reverse the case for that reason, but will make the correction here, reducing the judgment of the court below to the sum of $887.14, and affirming the judgment as to that amount, with costs of this Court to defendant.

The other Justices concurred.

---

[1] The jury were instructed not to add interest to the amount of plaintiff's loss, if they found in her favor, which by consent of counsel was to be computed by the court at six per cent. for five and two-thirds months, and amounted to $25.77, which, added to the $910 insurance covered by the policy, made a total of $935.77, for which sum judgment was rendered.