CHARLES H. HALL v. THE CONCORDIA FIRE INSURANCE
COMPANY.

*Fire insurance—Conditions of policy—Other insurance—Proofs of
loss—Property covered—Evidence—Appeal—Costs.*

1. One of two owners of a quantity of eggs insured his interest in
   the property. The policy provided that he should notify the
   company of any other existing or after insurance applying to the
   property, or any part thereof, and that the policy should be
   void if the assured should fail to comply with its terms, con-
   ditions, or covenants, or if he should then or thereafter have
   any other policy purporting to create insurance on the prop-
   erty, or any part thereof, without the consent of the company
   indorsed on the policy. The co-owner afterwards insured his
   interest in the eggs in another company, without the knowl-
   edge or consent of the holder of the first policy, which is held
   not to be avoided by the taking of such insurance.

2. None of the forfeiture clauses of an insurance policy referred
   to the adjustment of loss thereunder, proceedings for which
   were to be in accordance with the terms and stipulations
   printed on the back of the policy. Among these was a pro-
   vision by which proofs of loss were to be furnished within 30
   days after a loss occurred; and it was further provided that
   the claim of the assured should not be due or payable until 60
   days after such proofs were furnished, and that no suit for the
   recovery of the claim should be sustainable unless commenced
   within 6 months next after the fire occurred; which provisions
   are held to furnish their own penalty for a failure to furnish
   proofs of loss within the time limited in the policy; citing
   *Tubbs v. Insurance Co.,* 84 Mich. 646.[1]

3. An insurance company insured against loss or damage by fire
   " to the following described property, only while located and
   contained as described herein, and not elsewhere, to wit, $1,000
   on stock of eggs in store (in pickle)," contained in the base-
   ment of a designated dwelling-house. And it is held that the
   words " in pickle" do not necessarily imply that the stock of
   eggs should be insured only when in vats, and that it was
   competent to show that they were intended to be covered at any
   time while in store and undergoing the process of pickling for

---

[1] See *Gould v. Insurance Co.,* 90 Mich. 302.

market, in its various stages, including the process of drying, and while packed in crates, and until actual shipment from the assured's place of business; it appearing that the agent who wrote the policy visited the premises, and knew of the manner in which the business was conducted.

4. Where, after a case is removed to the Supreme Court, the plaintiff remits an admitted excess in the verdict as directed by the lower court, and the defendant brings the case to a hearing, and the judgment is affirmed except as to such excess, the plaintiff will recover the costs of both courts.

Error to Ingham. (Person, J.) Submitted on briefs January 8, 1892. Decided March 4, 1892.

*Assumpsit.* Defendant brings error. Affirmed, except as to an admitted excess of $60, which the plaintiff remitted before the hearing, and judgment is entered for the correct amount. The facts are stated in the opinion.

*Norris & Norris,* for appellant, contended:

1. By accepting the policy the plaintiff agreed " to notify the company if, at the making of this insurance, or at any time during its continuance, there shall be any other insurance applying to the property herein described, or any part thereof, whether the same be valid or not; and the policy provided that it should become void if the assured failed or neglected to comply with its terms, conditions, or covenants. The undisputed testimony shows that there was " other insurance applying to the property herein described," and that the assured knew of part of it, and his agent knew of the whole, and there was no evidence of notice to the company of such insurance prior to the fire, hence the entire policy was void; citing *Insurance Co. v. Riker,* 10 Mich. 279; *Insurance Co. v. Fay,* 22 Id. 467, 471; *Insurance Co. v. Watson,* 23 Id. 486; *Insurance Co. v. Horton,* 28 Id. 173; *Insurance Co. v. Hurd,* 37 Id. 11; *Emery v. Insurance Co.,* 51 Id. 469; *Robinson v. Insurance Co.,* 63 Id. 90.

2. The condition above quoted was inserted expressly to apply to such cases as this. It is not the condition avoiding the policy for other insurance held *by the assured,* which condition is also found in the policy (see opinion, page 407), which latter condition is to prevent the assured from overinsuring his interest

without the company's assent. The parties were tenants in common, and each insured his interest separately. This other insurance by Taylor and Bennett was not other insurance by plaintiff, and consequently was no breach of the last-mentioned condition, but it was "other insurance applying to the property herein described," and consequently, following the unbroken rule of this Court, as laid down in the cases cited, the entire policy was avoided.

3. The forfeiture was not nullified by the permission indorsed on the policy for $1,000 other concurrent insurance, because:

a—The other insurance complained of was not concurrent. Insurance, to be concurrent, must cover the same *property* and the same *interest*; citing 2 May, Ins. § 365; and while the Bennett and Taylor policies covered the same property, they did not cover the same interest, and hence were not concurrent.

b—If said policies could be said to be concurrent, nevertheless the condition was violated, as they exceeded by $200 the amount of concurrent insurance permitted.

4. The condition that the assured shall furnish proofs of loss within 30 days after the fire is by express terms a "part of this contract," and also one of the "terms, conditions, and covenants," the violation of which avoids the entire policy; and where a policy requires proofs of loss to be furnished within a limited time, and provides that a failure so to do shall avoid the policy, the condition will be enforced; citing 2 Wood, Ins. § 437; 2 May, Ins. § 465; *Insurance Co. v. O'Connor*, 29 Mich. 241; *Insurance Co. v. Kranich*, 36 Id. 292, 293; *Tubbs v. Insurance Co.*, 84 Id. 653.

5. The conidtions of the policy, both those on its face and those on its back, are in express terms part of the policy; and the rule for the construction of insurance policies is the same as in other cases, that effect must, if possible, be given to every clause of the contract, according to its true meaning and intent; citing 1 May, Ins. § 172; *Norris v. Showerman*, Walk. Ch. 206, 2 Doug. 16; *Newton v. McKay*, 29 Mich. 1; *Manufacturing Co. v. Ellis*, 68 Id. 101.

6. The policy on its face was entirely unambiguous, and covered eggs only while "in pickle;" and Barnes' testimony tending to reform it into another contract was inadmissible. It is important to note that of the eggs in pickle 28 per cent. were saved, with slight damage, while those in crates, barrels, and on racks were wholly destroyed; which shows how great was the additional hazard caused by the removal from the vats. The assured had accepted the policy as written, kept it six months,

and, if there was any mistake in its wording, he should have filed a bill to reform it before suit; citing *Insurance Co. v. Circuit Judge*, 77 Mich. 236; *Balen v. Insurance Co.*, 67 Id. 179; and, in an action on a written contract, evidence in explanation of the circumstances of its execution, or of the sense in which certain words were used in it, is only admissible when ambiguous or equivocal words have been employed; citing *Insurance Co. v. Throop*, 22 Mich. 146; *Johnson v. Cranage*, 45 Id. 14; *Trowbridge v. Dean*, 40 Id. 687; 1 May, Ins. § 179.

7. The error in computation of interest, if no others, should be corrected at plaintiff's expense; citing *Tubbs v. Insurance Co.*, 84 Mich. 656.

*Cahill & Ostrander*, for plaintiff, contended for the doctrine of the opinion.

MONTGOMERY, J. The plaintiff sued upon a policy of insurance of $1,000, issued by the defendant upon a stock of eggs. The evidence being undisputed, and all offered on behalf of the plaintiff, counsel on both sides agreed that it was a case in which the court should direct a verdict one way or the other. The plaintiff recovered, and the defendant appeals.

The three principal points relied on are:

1. That the policy is void because of other insurance applying to the property mentioned in the policy, which was placed without notice to the company.

2. That the policy has been avoided, because proofs of loss were not furnished by the assured within the time required by the policy.

3. That, if the policy is not held void for the reasons stated, nevertheless the assured could only recover for eggs in pickle at the time of the fire.

1. The policy contained the following clauses:

"I. The assured, by the acceptance of this policy, hereby covenants and agrees: * * * * * * *

."3. To notify the company if, at the making of this insurance, or at any time during its continuance, there shall be any other insurance applying to the property herein described, or any part thereof, whether the same be valid or not.

"II. This entire policy shall become void and of no effect:

"1. If the assured shall fail or neglect to comply with its terms, conditions, or covenants."

This is followed by 10 additional clauses, stating conditions under which the policy shall become void, and these in turn are followed by 11 recitals of circumstances, for all losses under which the company will not be liable.

Among the conditions, under the heading, "This entire policy shall become void," etc., occurs:

"5. If the assured shall have, or hereafter have, any other policy, purporting to create insurance, whether valid or not valid, on the property herein specified, or any part thereof, without the written consent of this company thereto indorsed hereon."

The plaintiff contends that all these provisions are to be construed together, and that the policy, after providing that the same shall be void if the assured fails to comply with its terms, conditions, or covenants, immediately proceeds to recite the terms, conditions, or cov-- enants a violation of which will avoid the policy, and expressly recites the same covenants stated under heading I, including the clause relating to over or other insurance, although put in somewhat different form; and that the condition No. 5 under head II, when the rule of law as to overinsurance or other insurance is applied, is precisely the provision mentioned under the first head of the policy, requiring the assured to give notice of other insurance.

The facts as to the overinsurance are that the plaintiff had an undivided interest in the stock of eggs insured. One Taylor was a co-tenant, and subsequently obtained insurance on his interest. It is also claimed that one Bennett, who was also interested in the property, had concurrent insurance; but the record discloses that he had no insurance on his pickled eggs, which is the only

property covered by plaintiff's policy. No additional insurance was placed upon the undivided interest owned by the plaintiff, nor did he know of any insurance by Taylor.

We think the policy was not void. Covenants against overinsurance are usually construed to relate to additional insurance affecting the interest of the assured. 2 May, Ins. § 365; *Assurance Co. v. Scammon*, 126 Ill. 355 (18 N. E. Rep. 562); *Insurance Co. v. Turnbull*, 86 Ky. 230; *Williams v. Insurance Co.*, 15 La. Ann. 651. In this State it has been held that the conditions which avoid a policy of insurance in case of other insurance are not violated by insurance effected by the mortgagee. *Guest v. Insurance Co.*, 66 Mich. 98; *Carpenter v. Insurance Co.*, 61 Id. 635. The defendant's contention is that the provision in question here should be construed to relate to any insurance effected upon the property, whether it covered the same interest as that insured to plaintiff or not. But it seems to us that in no event can it mean more than that the plaintiff shall be required to give notice to the company of any other insurance which may come to his knowledge.

In the case of *Insurance Co. v. Drake*, 2 B. Mon. 47, the assured held an equitable interest in two-fifths of a brick block, and took out a policy of insurance covering the two-fifths of the building, which policy contained as one of its provisions the following:

"6. Persons insuring property at this office must give notice of any other insurance made on their behalf on the same, and cause such other insurance to be indorsed on their policies. * * * Unless such notice is given, the insured will not be entitled to recover in case of loss."

A subsequent policy was taken out on the entire building by the legal owner as trustee. The court say:

"We are equally clear that his [plaintiff's] policy is not forfeited. It is contrary to the principles of justice, and cannot be deemed to have been within the contemplation of the parties, or to be required by any proper interpretation of the sixth article, that he should be made to forfeit his whole policy for a failure to give notice of that which was done by another without his privity or consent, and of which he had no notice. * * * The stipulation requiring notice to be given implies that no other policy was meant than one that was or should be effected at his instance or upon his authority. Of such policies he must have notice, and, having notice, might be required to give it to the office at which he had insured; but, if the subsequent insurance effected on his account by another without his knowledge or sanction be embraced by the terms of the article, then he is required to do that which is impossible for him to do, and, by the literal terms of the article, subjected to a forfeiture of his policy for his failure to do it. We cannot sanction such a construction."

And it is laid down in 2 May, Ins. § 365, generally:

"It is additional and valid insurance, prior or subsequent, upon the same subject, risk, and interest, effected by the same insured, or for his benefit, and with his knowledge or consent, that amounts to overinsurance. Owners of different interests in the same property, and joint owners, may respectively insure their interests without risk of violating a provision against other insurance." See, also, *Savings Bank v. Insurance Co.*, 31 Conn. 518.

We do not think the policy in question is avoided by the insurance taken out by Taylor without plaintiff's knowledge or consent.

2. Was the policy rendered void by failure of the plaintiff to furnish proofs of loss within 30 days? Reference has already been had to the numerous provisions in the policy under the heads: "This entire policy shall become void," and "This company shall not be liable." Under neither of these heads is any reference made to the method of adjusting loss, but under a distinct heading the policy reads as follows:

"VI. Relating to the method of adjustment of loss and payment thereof.

"It being understood and agreed that all proceedings after a loss shall be in accordance with the terms and stipulations printed on the back of this policy, which are hereby declared to be a part of this contract, and are to be resorted to in order to determine the rights and obligations of the parties hereunto."

On the back of the policy is printed the following:

"Persons sustaining loss or damage by fire or lightning shall within thirty days thereafter render a particular account of such loss or damage, signed and sworn to by them, stating the time, origin, and circumstances of the fire.  *  *  *  The claim shall not be due or payable until sixty days after full completion of all the requirements herein contained."

It is further provided that the assured shall submit to examination when required, etc. And, finally:

"It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within six months next after the fire shall occur; and, should any suit or action be commenced against this company after the expiration of the aforesaid six months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim."

We think it was intended that these provisions relating to the method of adjustment of loss and payment thereof should stand by themselves, and that they furnish their own penalty for failure to comply with the strict terms of the policy, viz., that the claim should not be due and payable until 60 days after the full completion of all the requirements contained therein, and that no action should be commenced after 6 months from the date of the fire.

In *Insurance Co. v. Downs* (Ky.), 13 S. W. Rep. 882, the conditions of the policy were very similar to those

contained in the one under consideration, and it was held that it was not intended that the failure to furnish proofs within the 30 days should work a forfeiture, but that such failure simply operated to suspend the right of action until proofs were furnished at some date within 6 months.   See, also, *Tubbs v. Insurance Co.*, 84 Mich. 646.

We think the failure to furnish proofs within 30 days was no bar to the action.

3. The property insured was described as follows in the policy:

"The following described property, only while located and contained as described herein, and not elsewhere, to wit:  One thousand dollars on stock of eggs in store (in pickle), situate," etc.

It appeared that at the time of the fire only about $400 worth of the eggs consumed were in the pickling vats, the remainder having been taken out preparatory to shipment.   The business of the plaintiff consisted in purchasing eggs from various local dealers, shipping them to Mason, and there putting the eggs in preservation in pickle, to lie until they could be sold later in the season at a profit.   When the eggs were received at Mason they were examined for the purpose of detecting unsoundness.   The good eggs were placed in brine in vats.   When it was desired to sell, the eggs were taken from the vat, and laid upon a tray to dry, and, when dried, were packed in crates and barrels for shipment.   It appeared that the agent who wrote the policy knew of this course of business, and visited the premises at the time the policy was written; and in answer to a question as to what he meant by the term "in pickle," testified:

"Well, I understood it, the eggs while they were in there being pickled and being disposed of.   That is my understanding of what it was wanted to do."

We think the language, while possibly ambiguous, was open to this construction, and, at the least, it can be said that the words "in pickle" do not necessarily imply that the stock of eggs should be insured only when in vats, but it was competent to show that it was intended that they should be covered at any time while contained in store and undergoing the process of pickling for market, in its various stages, including the process of drying, and while packed in crates, until actual shipment from plaintiff's place of business.

4. Complaint is made that the witness Bennett was allowed to testify that he "expected the eggs belonged to plaintiff." As we have assumed in this opinion that the plaintiff's interest was only an undivided interest, this error cannot prejudice the defendant.

5. Complaint is also made that the court directed a verdict for $60 too much. This is a plain error, which should be corrected; but, as the plaintiff has in this Court remitted the excess, by consent of defendant's attorneys, and since such remittitur the defendant has brought the case to hearing in this Court, we see no reason why we should allow costs to the defendant, or withhold costs from the plaintiff.

Judgment will be entered for $1,070, with costs of both courts to plaintiff.

The other Justices concurred.