Argued 2 February, decided 3 April, 1905.

**STINCHCOMBE v. NEW YORK LIFE INS. CO.**

80 Pac. 213.

Insurance—Construction of Policy That Does Not Become Effective Until Payment of Premium.

1. An application for insurance, made May 5th, stipulated that any policy that might be issued should not be in force until the actual payment and acceptance of the premium, during the applicant's lifetime and good health. The policy was issued, and a two years' term premium paid on July 24th. The policy provided that it was issued in consideration of the application, which was made a part of the contract, and in further consideration of the two years' term premium, and of the payment of the life premium on the 5th day of May every year thereafter during the continuance of the policy. *Held,* that the insurance became effective for the entire term of the policy, subject to the provisions prescribing forfeiture

for nonpayment of premiums, on July 24th, and the term premium covered and paid for insurance for two years from that date.

FORFEITURE—INCONSISTENT PROVISIONS OF POLICY.

2. Where a life insurance policy was issued on May 5th, but did not go into effect until July 24th, when the premium for two years was paid, the failure to pay a premium on May 5th, two years later, did not forfeit the policy, under a provision of forfeiture for nonpayment of any premium, the premiums being due on May 5th of each year, for the payment of the double premium extended the life of the contract for two years from July 24th.

TIME FOR FURNISHING PROOFS OF DEATH.

3. Noncompliance with a provision of an insurance policy requiring the beneficiary to furnish proofs within one year after the death of insured, to which no penalty is subjoined for nonobservance, does not forfeit the policy, but merely requires the furnishing of proofs prior to the bringing of an action.

LIMITATION—ACCRUAL OF RIGHT OF ACTION.

4. Under a policy requiring the beneficiary to furnish proofs of death and limiting the time for bringing an action on the policy, the cause of action does not accrue until the proofs of death have been received and approved by the insurer.

EFFECT OF RETAINING PROOFS OF DEATH WITHOUT OBJECTION.

5. The action of an insurance company in retaining without objection the proofs of death furnished by the beneficiary of a policy amounts to an approval of them.

From Multnomah: JOHN B. CLELAND, Judge.

This is an action by Idonia Stinchcombe against the New York Life Ins. Co. on an insurance policy. George W. Stinchcombe made application, May 5, 1894, at Forest Grove, Or., to defendant for insurance on his life in the sum of $2,000, payable to his wife, the plaintiff, in case of his death during the continuance of the policy contemplated to be issued in pursuance thereof. Among other things, it was stipulated by the applicant that any policy that might be issued should not be in force until the actual payment to and acceptance of the premium by the company or its authorized agent during his (the applicant's) lifetime and good health, and that no suit should be brought against the company under "said contract" after the lapse of two years from the time the cause of action accrues. The defendant signed and issued its policy on July 10th following, which was transmitted to Stinchcombe, who accepted it and paid the premium of $70.40, being for two years, on the 24th of the same month. The defendant by its policy promises and agrees to pay $2,000 to Idonia Stinchcombe, wife of the insured, immediately upon receipt and approval of proofs of the death of the insured during the continuance in force of such policy. The policy further provides, and it is so conditioned, that it is made

in consideration of the written application therefor, and of the agreements and warranties therein contained, which are made a part of the contract, and in further consideration of $70.40, to be paid in advance by the insured (being premium for two years' term insurance), and of the payment of $47.40 (being the life premium), on the 5th day of May every year thereafter during the continuance of the policy. The benefits and provisions placed on the next page of the policy were also made a part of the contract. Among such provisions are found these:

"All premiums are due and payable at the home office of the company unless otherwise agreed in writing. * * If any premium is not thus paid on or before the day when due then (except as hereinafter otherwise provided) this policy shall become void, and all payments previously made shall remain the property of the company.

"A grace of one month will be allowed in payment of premiums on this policy, subject to an interest charge of five per cent per annum for the number of days during which the premium remains due and unpaid.

"During said month of grace the unpaid premium, with interest as above, remains an indebtedness due the company, and in the event of death during the said month, this indebtedness will be deducted from the amount of the insurance.

"Within one year after the death of the insured the company must be furnished at its office, in the city of New York, with proofs of death, which shall comprise satisfactory statements establishing the claim. Such statements must comply fully with the company's present forms. If it is found that the age of the insured was understated in the application, the amount of insurance payable shall be such proportion of the amount of the policy as the premium paid bears to the required premium at the true age."

The complaint contains two counts. The first, after setting out the issuance of the policy, its conditions, and the death of Stinchcombe on July 3, 1896, shows that the defendant, at the request of plaintiff, made March 22, 1900, sent her blank forms for proof of death, which were received on April 3d following; that on the 26th of the latter month she duly prepared said blanks by filling in the required data, and verified and forwarded the same to the company at New York City, and that the company received such proofs, and has since retained them

in its possession, without making any objections thereto. The action was commenced July 6, 1900. The second cause is, in effect, the same as the first, except that it states matter intended to show a waiver on the part of the company of the condition contained on the next page of the policy, providing that proofs of death must be furnished the company at its office in New York City within one year after the death of the insured. A demurrer was interposed to both these causes of action, which was sustained as to the first and overruled as to the second, and, trial being then proceeded with before a jury, the defendant at the close of the plaintiff's evidence moved for a judgment of nonsuit against plaintiff, which being granted, the case was dismissed, and plaintiff appeals.                        REVERSED.

For appellant there was a brief over the names of *Dell Stuart* and *Paxton, Beach & Simon,* with an oral argument by *Mr. O. F. Paxton.*

For respondent there was a brief and an oral argument by *Mr. Geo. H. Durham.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

1. The first question presented in the logical course of inquiry is whether the policy had lapsed prior to the decease of Stinchcombe, July 3, 1896. By its terms the life premium of $47.40 is made payable on the 5th day of May in every year "thereafter," the premium for two years in advance having been paid on July 24, 1894. Under a condition of the application, the policy was not to be in force until the actual payment to and acceptance of the premium by the company, and during the lifetime and good health of the applicant. There was no binding receipt issued by the company, or its agent, putting the insurance in force from the date of the application, to wit, May 5, 1894, subject to the condition of its acceptance by the company and the issuance of the policy, as is sometimes done. We have therefore only to look to the terms of the policy to ascertain when it became effective as an insurance upon the life of Stinchcombe, and to determine the conditions upon which it might be continued in force, as well as those the nonobservance of which would entail a forfeiture. There was a care, it will be seen, on the part of

the company, that the policy should not be in force—that is, that the company should not itself become liable—except on the concurrent existence of certain conditions, namely, the actual payment of the premium during the lifetime and good health of the applicant. He might have been living and in good health, but without the actual payment of the premium no liability would have been incurred on its part, and that because, as the condition reads, the policy "shall not be in force." Now, if it was intended that the policy should become effective as against the company only when these conditions were fulfilled on the part of the applicant, what is there in the contractual relations to put it in force or to cause it to become operative as against the applicant in the mean time? There are no other stipulations indicating an intendment of that nature, and, as we have seen, there is no binding receipt putting it into effect at once, either conditionally or otherwise. The policy was issued on July 10, 1894, and, if left to the provisions on the face of it alone, would ordinarily have been effective from that date; but the application is made a part of it, and so are the conditions and provisions on the next page following the signatures of the officers of the company, and all must be construed together to get at the true intendment of the parties as they are, and constitute in reality but one contract. If, therefore, the policy was not to be in force to bind the company until the concurrence of the conditions designated, it is a most reasonable and fair deduction that it was also not intended that it should become effective as it concerned the assured at a date prior to their fulfillment. The defendant either insured Stinchcombe from the 5th day of May, or it did not insure him until the 24th day of July, when the policy was delivered and the premium paid and accepted by it. It is certain that it did not make itself liable until the latter date, and are we to suppose that, without engagement to that purpose, the company intended to collect the premium and the insured to pay for insurance he did not have? Rather would the deduction be to the contrary. And such is our interpretation of the contract, that it did not become effective and binding as an insurance upon the life of Stinchcombe until such latter date,

either to fix the liability of the company or to require the insured to pay for insurance in the mean while.

2. Now, the $70.40 paid for two years' insurance.   It is so expressly stated in the policy as follows: "Being the premium for two years' term insurance."   This insurance began with the date of July 24, 1894, by the delivery of the policy and the payment and acceptance of the premium, and Stinchcombe's life became insured, not alone for the term of two years, but for the entire term fixed by the policy according to its provisions, but subject to forfeiture for the failure to perform those conditions subsequent as might entail such a result, among which are those relating to the prompt payment of the premiums: *New York Life Ins. Co.* v. *Statham,* 93 U. S. 24 (23 L. Ed. 789).   By one of the conditions on the next page, so denominated, a grace of one month is allowed in the payment of the annual premiums, subject to an interest charge, so that on the face of the contract there was accorded the insured 25 months in which to make the second payment of premium, thus extending the time to June 5, 1896.   Such premium not having been paid before that date, a forfeiture was incurred, but when did it become operative?   At once upon the default in meeting the payment, or at the end of the time for which the insured had paid for his insurance?

It is argued that the forfeiture clause is direct and unmistakable, and indicates an intendment that the policy should become at once void by reason of the nonpayment of the premium on the day it was demandable.   It does not say so, however, but that it "shall become void."   The interpretation would deprive the assured of a period of the insurance that he had actually paid for, to wit, from June 5th to July 24th, so that the forfeiture, in that view, would not only incur the penalty of depriving the assured of his right to continue under the contract, but also of cutting short by a most appreciable term the insurance absolutely obtained by payment of the premium for two years in advance.   There is here a palpable incongruity, and, if the company's contention be the correct one as to the proper interpretation of the contract, it is perfectly manifest that it will be fraught with injustice to the beneficiary.   It is

[21—46 Or.]

very well understood, a condition arising from an innate sense
of justice, that the law in its policy and spirit is averse to the
declaration of forfeitures, and will not entail such consequences
as between individuals but in pursuance of the plain and obvious
intendment of contractual relations. It is also a canon of the
construction of contracts, so well settled as to need no citation
of authorities to support it, that inconsistent provisions render-
ing it doubtful or uncertain whether, or under what conditions,
a forfeiture was really intended, will be so interpreted, when-
ever they can, within the bounds of reason and common fairness,
as to elude the forfeiture and secure to the parties that to which
they are in justice entitled. Beyond this there is another rule
that, as between inconsistent, conflicting, and incongruous pro-
visions, of doubtful and ambiguous significance, in a policy of
insurance, it being manifest that the form and all the necessary
conditions are the statements, essentially, of the officers, agents,
and attorneys of the company, the construction most favorable
to the assured will be adopted and applied: *Fenton* v. *Fidelity &
Cas. Co.* 36 Or. 283 (56 Pac. 1096, 48 L. R. A. 770) ; *Stringham*
v. *Mutual Life Ins. Co.* 44 Or. 447 (75 Pac. 822) ; *National
Bank* v. *Insurance Co.* 95 U. S: 673 (24 L. Ed. 563) ; *McMaster*
v. *New York Life Ins. Co.* 183 U. S. 25 (22 Sup. Ct. 10, 46
L. Ed. 64). Now, applying these plain and obvious canons of
construction and interpretation, it is neither inconsistent with
reason nor fair dealing to conclude that the true intendment
of the contract, looking through the whole of it, including the
application, the policy, and the provisions on the next page, is
that there should be no forfeiture of the insurance paid for—
that is, of any part of the "two years' term insurance"—and
that the policy was not rendered void, as affecting such term or
period, until its time had fully run. This does not take into
account the effect of the provision touching the month of grace
for making the payment, because not involved here. Such, in
effect, is the holding of the Supreme Court of the United States
in *McMaster* v. *New York Life Ins. Co.* 183 U. S. 25 (22
Sup. Ct. 10, 46 L. Ed. 64). In reality, this is a much stronger
case than that for the beneficiary. It does no injustice to the
insurance company having received the stipulated consideration,

and it conserves to the insured or his beneficiary that for which he has actually paid his money in the way of premium.

3. This brings us to the inquiry as to what is the effect of a noncompliance by the beneficiary with the clause in the contract of insurance requiring that proofs of death, comprising satisfactory statements establishing the claim, should be forwarded to the company at its office in New York City within one year after the death of the insured. Does such noncompliance avoid the policy so that the beneficiary has no basis upon which to found an action? Or, coupled with the clause limiting the right of action to a period of two years after the cause shall have accrued, has her right to sue become barred so that she is now without a remedy? Referring to the clause first mentioned, it will be seen that no penalty is subjoined, by way of forfeiture or other provision, rendering the policy void by reason of the nonobservance of the requirement, as is the case with respect to the preceding stipulation relating to the nonpayment of the premium within the designated time. In itself it is a bare undertaking that the beneficiary shall make the proofs within the year, without more. It must, however, be read in connection with the other clauses of the contract, and, when even so read, it becomes very clear under the authorities that it does not entail a forfeiture in case of a failure to make the proofs within the year. Mr. Joyce, in his work on Insurance, vol. 4, § 3282, says: "If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose a forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action, though he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing the action upon the policy." And by a preceding section (3277) he affirms that similar clauses in life policies are to receive a like construction. The text is supported by the following authorities: *Kenton Ins. Co.* v. *Downs,* 90 Ky. 236 (13 S. W. 882); *American Cent. Ins. Co.* v. *Heaverin,* 18 Ky. Law Rep. 190 (35 S. W. 922); *Orient Ins. Co.* v. *Clark,* 22 Ky. Law Rep. 1066

(59 S. W. 863) ; *Tubbs* v. *Fire Ins. Co.* 84 Mich. 646 (48 N. W. 296) ; *Hall* v. *Concordia Ins. Co.* 90 Mich. 403 (51 N. W. 524) ; *Aurora F. & M. Ins. Co.* v. *Kranich,* 36 Mich. 289; *Coventry Mut. L. S. Ins. Assoc.* v. *Evans,* 102 Pa. 281; *Taber* v. *Royal Ins. Co.* 124 Ala. 681 (26 South. 252). The effect of such a provision when no forfeiture is entailed, and there has been a nonobservance within the period designated, is to postpone the right to sue until the requirement as to proofs has been complied with: *Spare* v. *Home Mut. Ins. Co.* (C. C.) 17 Fed. 568; *Kahnweiler* v. *Phoenix Ins. Co.* (C. C.) 57 Fed. 562; *Mayor of New York* v. *Hamilton Fire Ins. Co.* 39 N. Y. 45 (100 Am. Dec. 400) ; *Vangindertaelen* v. *Phenix Ins. Co.* 82 Wis. 112 (51 N. W. 1122, 33 Am. St. Rep. 29). Of course, if any damage has resulted to the company by reason of the breach of the undertaking on the part of the beneficiary, it would be entitled to that, but it is not thereby relieved of liability on the policy. Compliance within the time is therefore not a condition precedent to a recovery, but a compliance at some time within the period within which an action may be maintained is a condition precedent to the right of action.

4. The idea is suggested, and not without some show of reason for its support, that it was the intendment of the two clauses, namely, the one fixing the time within which the proofs must be made, and the other determining the period limiting the right of action, when read together, to fix the uttermost limit at which an action could be maintained at three years—that is, one year in which to make the proofs and two years thereafter in which to commence the action—and that in no event was it designed that the action could be maintainable after the lapse of the combined periods. The policy is so drafted, however, that no cause of action accrues until the receipt and approval by the company of the proofs of death. It is not the incident of the death of the assured alone that gives rise to the cause, but it requires also the receipt and approval by the company of the proofs of death to be furnished by the beneficiary, as it is only upon such conditions that the company agrees to pay, and, of course, if insisted upon, unless there has been a waiver, no action could possibly be maintained until they have been com-

plied with.   Thus conditioned, the company would have the
policy so construed that it incurs no liability until it has received
and approved the proofs of death, and in the mean time have
the statute of limitations, which the parties have fixed, running
against a cause of action that has never accrued.   There is here,
also, an inherent incongruity that ought not to avail to entrap
the unwary, and the only rational construction, fair alike to
both contracting parties, is that the cause of action does not
accrue until the receipt and approval by the company of the
proofs of death, and that the prescribed statute of limitations
begins to run from that date.   If, however, the company has
suffered damage by reason of the delay in not making the proofs
within the time specified, it ought to have its remedy to that
extent.   This is the legitimate result of what we are impressed
is the equitable as well as reasonable interpretation of the con-
tract the parties have entered into.   It can do no injustice in
any direction.

To indicate this we have but to trace briefly the incidents
leading to the consummation of the contract.   On May 5, 1894,
Stinchcombe made his application upon one of the regular forms
provided by the company.   In it he was required to stipulate
that any policy issued in pursuance thereof—one that, suppos-
edly, he had never seen—"should not be in force until the actual
payment to and acceptance of the premium by said company,"
and that "no suit shall be brought against said company under
said contract after the lapse of two years from the time the
cause of action accrues."   On the 24th of July following, the
policy arrived, whereby the company agreed to pay $2,000 stip-
ulated insurance immediately upon the receipt and approval by
the company of the proofs of death during its continuance in
force.   This is followed by a clause reciting that the considera-
tion for which the policy is issued is the sum of $70.40, payable
in advance, being the premium for two years' term insurance,
and the payment of $47.40, being the life premium, on the 5th
day of May in every year thereafter during the continuance of
the policy.   Then follow the signatures of the officers of the
company, after a short clause as to its incontestability, but on
the next page are numerous provisions, all made a part of the

contract as well as the application. Among them are those pertaining to the payment of the premiums, the avoiding of the policy for nonpayment when due, a month of grace and the time within which the proofs shall be made, all of which we have fully discussed, and are sufficiently understood. This contract, made up of all these conditions, the assured does not receive until he has actually paid the first two years' premium, so that he has had no voice in its formulation, which is wholly the product of the company, drawn presumably to protect, as far as possible, its own interests. With these notations in view, it needs but a glance to appreciate the inconsistencies and ambiguities attending the several conditions, sufficient to tax to the uttermost the ingenuity of the best legal minds to ascertain and determine their true intent. Is anything more necessary to afford ample reason for the rule that the provisions of the policy must be construed most favorably to the assured, and, conversely, most strongly against the company? And, observing this rule and other canons of construction with regard to forfeitures, we are impelled to the conclusion heretofore reached in the discussion of this case.

5. As shown by the first cause of action set out in the complaint, the beneficiary forwarded to the company her proofs of the death of the assured on the 26th of April, 1900. These the company retained without objection, and must be deemed to have approved them. No action accrued to the plaintiff, therefore, until these things had been done, and, the action having been instituted on July 6th thereafter, it was within the time, under the stipulated limitation, for commencing the same. In this view the first count states a good cause of action, and there was error in sustaining the demurrer thereto, for which the judgment must be reversed and a new trial awarded.

This renders it unnecessary to determine the questions involved by the nonsuit, as they may not arise upon a retrial.

REVERSED.