## NORTHERN LIFE INS. CO. v. SCHWARTZ.

District Court, N. D. California, S. D. April 25, 1927.

### No. 1535.

1. Insurance ⊜175, 400—Life policy held to have become effective on its date and not on premium due date, and not incontestable on date insured committed suicide.

Application for life insurance and the medical examination were made on August 2, and on that date applicant gave his note for the first year's premium and received a conditional binding receipt, which, however, was not effective to put the insurance in force on that date, because payment was not in cash. Policy was issued, dated August 14, and delivered later; but the premium due date was made in accordance with its terms on the date of the medical examination, August 2. The policy contained a clause making it incontestable, except for nonpayment of premiums, after one year from its date. Insured committed suicide, which was ground for avoidance of the policy, on August 9 of the following year. *Held*, that the policy became effective on August 14, and that a year had not expired at the date of suicide.

2. Insurance ⊜175—Premium due date does not necessarily fix effective date of policy.

Premium date on a life policy does not necessarily fix date policy became effective, where it bears a later date.

In Equity. Suit by the Northern Life Insurance Company against Alice Edith Schwartz. Decree for complainant.

Knight, Boland & Christin, of San Francisco, Cal., for plaintiff.

Ford, Johnson & Bourquin, of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. On August 2, 1924, Henri Charles Schwartz applied to the Northern Life Insurance Company for insurance upon his life in the amount of $25,000. On that day he gave to the agent of the insurance company a 30-day note, payable to and indorsed by himself, for $900, in settlement for the first year's premium. He received a receipt in the following terms:

"Conditional Binding Receipt.

"Oakland, Calif., Aug. 2, 1924.

"Northern Life Insurance Co., Seattle, Wash., received from Henri Charles Schwartz an application bearing same number as this receipt for $25,000 insurance on his life and nine hundred (note) dollars in cash, in full settlement of premium thereon: Provided, settlement for the full premium has been previously made, the insurance applied for (not in excess of limits below) shall take effect when an examination of the appli-

cant satisfactory to the company has been made by its medical examiner: Provided, nothing is developed as existing at or prior to the time of said examination which would ordinarily cause rejection at the company's home office for the plan and (or) amount of insurance applied for. If application is not accepted, the settlement made as above stated will be returned upon surrender of this receipt. In no event shall the company be liable under any insurance covering the applicant for a total (including any insurance previously issued or applied for) of more than $25,000 life insurance, or $50,000 inclusive of double indemnity for accidental death (except, if applicant is a female, company's limit of liability shall be $5,000 in any event), until policy is actually issued by the company. The applicant agrees to promptly obtain a medical examination by a regular examiner of the company.

"Walter E. Felthouse, Agent.

"This receipt must not be given unless settlement is made for full premium."

The word "(note)" was inserted by the agent. The medical examination was had on the same day, and the report and application were forwarded to Seattle, Wash., the home office of the insurance company. The agent's report included a statement that a note had been taken in settlement of the first year's premium. The entries made on the books of the insurance company also showed this fact.

Examination of the application by the home office showed that one question in the application remained unanswered, No. 8½: "Do you contemplate any change in occupation or residence?" The medical report being satisfactory, and the remainder of the application being in order, the policy was issued, and dated, August 14, 1924. The premium date was fixed as August 2, the date of the medical examination. The policy was sent to the agent, together with a supplement to the application by which Schwartz was required to answer question 8½ before receiving the policy. He gave this additional answer and received the policy August 22, 1924.

At the time of the application for insurance and subsequently Schwartz was the manager of the Pacific Cellulose Company, engaged in the manufacture of artificial silk at Walnut Creek, Contra Costa county, Cal. On the night of July 29, 1925, fire was discovered in the plant of this company. The fire fighters discovered the body of a murdered man in the laboratory of the plant, where the fire had evidently been started in an attempt to destroy the evidences of the crime. Schwartz had been doing the laboratory work of the company for some weeks, handling carbon bisulphide and acetone, which are highly inflammable, and which had been used in starting the fire. On the night of the fire, Schwartz disappeared. Early on the morning of August 9, 1925, police officers of Berkeley and Oakland, who had been searching for Schwartz, were notified that he was at an apartment house in Oakland. They proceeded to this house and made their way into the designated apartment, where they found the body of Schwartz, who had committed suicide at the moment of capture, leaving a letter confessing the murder of the person whose body was found at the time of the fire.

On August 12, 1925, the insurance company commenced this action against the beneficiary named in the policy for the cancellation of the policy, bringing itself within the equity jurisdiction by setting up the fact that the one-year period after which the policy became incontestable except for nonpayment of premiums was about to expire, and that plaintiff would be deprived of its defenses if forced to await suit on the policy by the beneficiary. The action is based upon the theory that the policy went into effect on August 14, 1924, and that the suicide of the insured within the year thereafter avoided the policy. Plaintiff also sets up an alleged breach of the conditions of the policy because insured was said to have "engaged in * * * handling explosives," and to have changed his occupation to one of greater hazard.

The fact of the suicide was admitted at the trial. The sole question to be decided here is as to the date when this policy went into effect. If the year allowed for contest had expired before August 12, 1925, when this suit was begun, none of the grounds for canceling this policy advanced by plaintiff are available.

The policy provides:

"Incontestability: This policy shall be incontestable after one year from date of policy, except for the nonpayment of premium or service in army or navy in time of war."

There are three dates suggested as the one when this policy went into effect:

(1) August 2, 1924, the date of the medical examination, and that from which the premium year ran.

(2) August 14, 1924, the date of execution and issue, and the date borne by the policy.

(3) August 22, 1924, the date when, the application having been completed, the policy was delivered.

The last date is not seriously urged, as it does not fall within the words "date of policy."

[1] The defendant beneficiary supports her view that the "date of policy," referred to in the incontestable clause, was August 2, 1924, by pointing to the agreement for interim insurance in the conditional binding receipt, which, she asserts, was ratified by the insurance company when it issued a policy bearing August 2 as its premium date, knowing that a note had been taken as settlement for the first year's premium, instead of cash. She also argues that, even if Schwartz were not in fact insured during the period between the medical examination and the issuing of the policy on August 14, the selecting of August 2 as the premium date operated retroactively to fix the commencement of all time periods connected with the policy as August 2, since the premium date is said to determine the time during which the insurance company is on the risk.

Under the facts of this case I do not believe that the conditional binding receipt had the effect of actually insuring the life of Schwartz during the period between August 2, 1924, and August 14, 1924. Had he died during this time, there could have been no recovery on the policy. A copy of the receipt had been sent to the company, which showed that its agent had attempted to bind it for the interim period by taking a note, instead of the cash required by the face of the receipt. No insurance was in existence until the insurance company acted upon the application on August 14. The question then is as to whether the acceptance of the application on August 14, and the issuance of a policy bearing that date, but with the premium date fixed as of August 2, operated as a ratification of the giving of the conditional binding receipt in its altered form by the agent, and put Schwartz's insurance in force retroactively from August 2, 1924. I do not believe this to be the case. The fixing of the premium date as August 2 did not operate to antedate the policy, and did not indicate an acceptance by the insurance company of the alterations made in the conditional binding receipt.

Mr. Willy, under whose direction this policy was written, testified, in response to a question as to the custom of the insurance company as to antedating policies: "Where the premium is not paid in cash, we postdate, and sometimes where it is paid in cash we antedate; but we would not postdate a case where the premium is paid in cash and the insurance is effective from the date of the examination, for the reason that we are on the risk and we are entitled to the premium." Accordingly, when this policy was issued, it was not antedated to the date of the medical examination, but bore the date when it was actually issued, conditioned on the completion of the application.

It is perfectly possible for the parties to agree upon a date from which the policy is to run which is earlier than and completely independent of the date of actual execution of the policy. Anderson v. Mutual Life Ins. Co., 164 Cal. 712, 130 P. 726, Ann. Cas. 1914B, 903; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. In the cases just cited the policies were executed upon dates considerably later than the dates shown upon the policy. The dates shown upon the policy coincided with the dates of the earlier medical examination and application, and were made the premium date as well. No quarrel can be had with these cases. They restrict the search for the date of the policy to the face of the policy. They hold in effect that the insurance company is estopped to deny that it went on the risk upon the date stated on the policy, and that that date is therefore the one to which the incontestability clause must be referred. These are true cases of antedated policies.

The situation is, however, different in the present case. The policy is dated August 14, 1924. The premiums run from August 2, 1924. The question is as to which of these is the "date of the policy." The policy states: "Unless otherwise required the premium due date of the policy shall be my medical examination." In accord with this provision the premium date was fixed in the present policy as August 2.

[2] The premium date upon a policy does not, however, necessarily fix the date when a policy goes into effect, when the policy itself bears a later date. McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Halsey v. American Central Life Ins. Co., 258 Mo. 659, 167 S. W. 951; Stinchcombe v. New York Life Ins. Co., 46 Or. 316, 80 P. 213; Lyke v. First National Life & Accident Ins. Co., 41 S. D. 527, 171 N. W. 603. These cases hold that the insured is entitled to insurance for a year plus 30 days' grace from the date when the policy went into effect, irrespective of the fact that the premium due date is earlier. In the present case, for instance, if the policy went

into effect August 14, 1924, the insurance company could not have forfeited the policy for nonpayment of premium until September 14, 1925, although the second year's premium would have become due August 2, 1925. This furnishes an answer to the argument that the premium date must fix the time when the policy goes into effect, because otherwise the insured is paying for insurance he has not received.

The date of this policy is, on the face of the policy, stated to be August 14, 1924. The earlier premium date does not operate to place the policy in force earlier. The conditional binding receipt did not in fact secure to Schwartz the interim insurance mentioned therein for the reasons above stated. It follows that this policy went into effect on August 14, 1924, and that insured therefore committed suicide, and this contest was begun, within one year from the date of the policy. The policy is therefore unenforceable and should be canceled.

Let judgment for plaintiff be entered in accordance with the prayer of the bill, upon payment to defendant of the $900 first-year's premium tendered. So ordered.