## THORNTON v. DEAN.

1. A penalty, under the laws of North Carolina, of double the amount of interest paid on a usurious contract, cannot be enforced by the courts of this State.

2. An executrix may sue in the courts of this State, letters testamentary having been here issued to her on the proof of a will under an exemplification of the proceedings from the proper office in North Carolina, where the original will was duly admitted to probate.

3. A note given in South Carolina, payable in North Carolina, secured by a mortgage of lands in this State, with a stipulated rate of interest which was usurious by the laws of North Carolina, but not usurious in South Carolina under the then existing law, may be enforced in the courts of this State according to the terms of the contract.

4. The mere fact that payment was stipulated to be made in North Carolina, does not raise a conclusive presumption that the contract was made with reference to the laws of that State.

5. If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country; if the contract stipulate generally for interest without fixing the rate, it should be the rate of interest at the place of payment; if no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment. *Peck* v. *Mayo*, 14 *Vt.* 33, approved.

6. In selling land for foreclosure, only so much should be sold as is necessary to pay the debt and costs, and it should be sold in such parcels as will secure the best price.

Before COTHRAN, J., Spartanburg, June, 1882.

The opinion fully states the case.

*Mr. J. S. R. Thomson,* for appellant.

*Messrs. R. K. Carson, Bobo & Carlisle,* contra.

August 29th, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Mrs. Dean, the defendant, of Spartanburg county, South Carolina, being pressed by debt, solicited a loan of money from John Rutherford, of Bridgewater, North Carolina. The arrangement was made at Spartanburg, South Carolina, by which Mrs. Dean gave her note to Rutherford for $7,000, as follows:

" $7,000.00. Three years after date, I promise to pay to John Rutherford, or order, at Bridgewater, N. C., seven thousand dollars, with interest from maturity, at the rate of ten per cent. per annum, for value received.

" Witness my hand and seal, this 3d day of June, 1874.

"MARY OWEN DEAN, [L. S.]
"Attest: S. BOBO."

The interest to be due before maturity, was secured as follows: $350 for the first half year was paid in cash or deducted from the amount loaned, leaving the money actually received, the sum of $6,650, and for the remaining two years and a half, five notes for the same amount, being the interest for six months, were given, payable, respectively, in twelve, eighteen, twenty-four, thirty and thirty-six months. These notes were also made payable at Bridgewater, North Carolina. These notes were all secured by a mortgage of a lot of land in the city of Spartanburg, South Carolina, where all the papers were executed, and the money changed

hands. Mrs. Dean was allowed permission to sell a part of the lands mortgaged, the proceeds of sale to go to the mortgage debt, and on June 19th, 1880, she paid to Simpson Bobo, Esq., the plaintiff's agent at Spartanburg, the sum of $3,500, which, in the absence of any direction from defendant, was applied to the five notes given for interest, and on November 1st, 1880, she paid the further sum of $1,100, which extinguished the five interest notes, and left a balance over to be credited on the large note.

Subsequently to the loan of the money, John Rutherford died, leaving a will, of which his widow, Elizabeth C. Thornton, was appointed executrix, and which was admitted to probate in Burke county, North Carolina, by D. C. Pearson, judge of Probate of that county, March 27th, 1880. The proceedings were exemplified to the judge of Probate for Spartanburg county, in this State, who admitted the same to probate, and issued letters testamentary in this State to the plaintiff, Elizabeth C. Thornton, who, as such executrix, instituted this proceeding in Spartanburg county, South Carolina, to foreclose the mortgage for the balance of the debt unpaid, upon the remainder of the mortgaged premises, which had not been sold. The principal defense was, that the fact appearing from the face of the notes, that they were payable at Bridgewater, North Carolina, the whole transaction was a North Carolina contract, and to be interpreted exclusively with reference to the laws of that State, which should be applied to the case, and which at that time prohibited the lending of money at a higher rate of interest than eight per cent. per annum, under forfeiture of all interest and costs.

The case came on to be heard by Judge Cothran, who held from the testimony : (1.) " That the contract between the parties was made in South Carolina; (2.) That the parties in making it had reference to the laws of this State in all of its material parts; (3.) That there was no intention to evade the usury laws of North Carolina, but, on the contrary, that the plaintiff was moved by a desire to relieve the embarrassment of the defendant, who was at the time under obligation to others to pay a higher rate of interest; (4.) That the place named for the payment of the note was for the convenience of the parties, and without any intention

of establishing such as the place of performance; (5.) That the premises mortgaged are situated in this State, where alone foreclosure could be had; (6.) That both parties recognized and affirmed this as the place of performance, by making and receiving payments of money upon the contract in Spartanburg," &c. The judge ordered a decree of foreclosure for the whole amount of the debt, with interest according to the terms of the contract, as that was allowable by the South Carolina law at the time of the contract.

From this decree the defendant appeals to this court upon exceptions, alleging that his Honor had erred as follows:

1. "In not at least ordering that the premises be subdivided into small lots, and only so many thereof be sold as might be necessary to pay the judgment.

2. "In not at least crediting the note sued on with the sum of $3,500 paid in June, 1880.

3. "In not at least crediting the note sued on with the further sum of $1,100 paid in November, 1880.

4. "In not finding as a matter of fact that the payments upon said note were made in North Carolina.

5. "In not finding that the plaintiff, Elizabeth C. Thornton, was not the regularly appointed and qualified executrix in this state of the will of John Rutherford, deceased.

6. "In finding that the defendant and John Rutherford, in making their contract, had reference to the laws of this State in all of its material points.

7. "In finding that Rutherford, in making the contract, was moved by a desire to remove the embarrassment of the defendant.

8. "In finding that the place named for the payment of the note was for the convenience of the parties, and without any intention of establishing such as the place of performance.

9. "In finding that both parties recognized and affirmed this as the place of performance by making and receiving payments upon the contract at Spartanburg.

10. "In not finding that the place of performance of said contract was at Bridgewater, North Carolina.

11. "In not holding that the usury laws of North Carolina operated upon said contract.

12. "In not finding at least that no more than eight per cent. interest could in any event be collected upon the note sued on.

13. "In not holding at least that the only amount recoverable in this action was the amount of money actually loaned, less the $4,600 paid thereon.

14. "In not holding that if the amount paid was applied to the payment of interest, then the defendant had a good and valid counter-claim for double the amount thereof."

The last exception was very properly abandoned. In no view of the case can our court enforce the penal laws of North Carolina.

It was in proof that the will of John Rutherford had been admitted to probate, both in Burke county, North Carolina, and in Spartanburg county, South Carolina; and the plaintiff qualified as sole executrix in both States. *Gen. Stat.*, 1882, § 1875.

The laws of a State are limited to its territory. As a rule, it administers only its own laws. But it sometimes happens that the judiciary of one State is called upon to administer the laws of another. Certain rules of "comity" have been adopted by common consent and are generally followed. For example, a case may arise in our courts upon a contract made in another State, and then the question arises, whether the law of the State where the contract is to be interpreted or that of the State where it was made, shall govern. As to all matters relating to remedies, each State insists upon enforcing its own laws—the *lex fori*; but in the interpretation of a contract it has been established by usage that the *lex loci contractus* must govern. The rule is clearly stated by Chancellor Kent with its qualifications: "Then it may be laid down as the settled doctrine of public law, that personal contracts are to have the same validity, interpretation and obligatory force in any other country which they have in the country where they are made. * * * It is, however, a necessary exception to the universality of the rule, that no people are bound or ought to enforce, or hold valid in their courts of justice, any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law," &c. 2 *Kent* *458.

Taking this as the rule, the defense in this case could not

stand, for, confessedly, the contract was made in South Carolina, whose public law upon the subject of interest at that time was: "That in all cases for the hiring or lending, or use of money, wherein, by the terms of the original contract, no specific rate of interest shall have been agreed upon in writing, signed by the party to be charged therewith, the legal interest shall be and remain at the rate of seven per cent. per annum." 13 *Stat.* 318. This provision has been construed to allow transactions where such specific rate of interest was agreed upon in writing, &c. *Wilson* v. *Maner*, 16 *S. C.* 469. The terms of the agreement in this case were in precise conformity to the requirements of this South Carolina law, and it seems to us were adopted with direct reference to that law, for, by the original contract, ten per cent. was "agreed upon in writing, signed by the party to be charged," &c. As a matter of fact, we suppose that there can be no doubt that the parties contracted with reference to the South Carolina law.

It is urged, however, that this rule of the *lex loci* is not universal; that it is changed in cases where the parties themselves contract with reference to the laws of some particular State other than that in which the contract was made. That is true. The general purpose of courts is to enforce contracts according to the intent of the parties; and if they make a contract in South Carolina, expressly or clearly with reference to North Carolina law, I know no reason why our courts, in carrying out the doctrine of "comity," would not apply the North Carolina law to it, except in the excepted cases stated by Chancellor Kent. But we do not think it follows that the single fact of the note being payable in North Carolina affords conclusive proof that they did so contract. It is true that indicating a place for payment affords a presumption, and is generally taken as sufficient proof of the fact. We do not, however, understand that this is a conclusive presumption of law, but is rather one of fact which may be rebutted. Suppose the parties had expressly declared in the note that this money, for convenience, was to be returned at Bridgewater, North Carolina, but the contract was made with direct reference to the South Carolina law, would any court enforce a contract which they did not make? . It is like the

presumption which arises, when no other place is named, that the parties contracted with reference to the laws of the country where the contract is made, which can be overthrown by showing that they actually contracted with reference to the laws of some other State, as is attempted here.

But be this as it may, if the isolated fact that the note was made "payable at Bridgewater, North Carolina" must, without regard to the actual intention of the parties, be regarded as conclusive evidence that the parties contracted with reference to the North Carolina law, we think there was no error of law in the decree of the Circuit judge. There has been some confusion and conflicting opinions on the subject, but we think it now settled by authority and sustained by reason, that in such cases there is an exception as to the interest on a debt when it is expressly stipulated in the contract. Without incumbering this opinion with a review of the authorities upon the subject, we are content to take the doctrine as laid down in the case of *Peck* v. *Mayo*, 14 *Vt.* 33, and cited in a note in *Kent, supra,* where, after full discussion, it was decided as follows: (1.) "If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country. (2.) If the contract stipulate generally for interest without fixing the rate, it shall be the rate of interest at the place of payment. (3.) If no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment," &c.

In commenting on this case it is said in a note to *Kent, supra:* "The principle now established in Louisiana and New York is, that the place where the contract was made determines its validity as to interest, though made payable in another State or country, where the rate of interest is lower. This principle has much to recommend it for reasonableness, convenience and certainty, except in cases where the whole arrangement was evidently and fraudulently intended as a mere cover for usury." No allegation even of such fraudulent intent is made here. Indeed, the judge finds as a matter of fact, and we concur with him, "that there was no intention to evade the usury laws of North Carolina, but, on the contrary, that the plaintiff was moved by a desire

to relieve the embarrassment of the defendant, who was at the time under obligation to others to pay a higher rate of interest."

The same doctrine has been announced by the Supreme Court of the United States. In the case of *Miller* v. *Tiffany*, 1 *Wall.* 310, it is said: "The general principle in relation to contracts made in one place to be performed in another is well settled. They are to be governed by the law of the place of performance, and if the interest allowed by the law of the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest without incurring the penalties of usury. *Andrews* v. *Pond,* 13 *Pet.* 77; *Curtis* v. *Smith,* 15 *N. Y.* 92. The converse of this proposition is also well settled. If the rate of interest be higher at the place of the contract than at the place of performance, the parties may lawfully contract in that case also for the higher rate," citing *Depeau* v. *Humphrey,* 20 *Mart.*; *Chapman* v. *Robinson,* 6 *Paige* 634; and see, also, *Dan. Neg. Inst.* (*2d edit.*), § 922, and many authorities.

The forfeitures under the North Carolina usury law are somewhat in the nature of penalties, very different from our own law of force at the time of the contract, and to make it proper for the courts of this State to enforce them in the very face of our own law, would require the clearest evidence that the parties contracted alone with reference to the law of North Carolina, and in doing so had violated the usury law of that State. One of the established rules in respect to the doctrine of comity is, that when the *lex loci contractus* and the *lex fori*, as to conflicting rights acquired in each, come in direct collision, the comity of nations must yield to the positive law of the land. 2 *Kent* 461. In this case the contract was made in South Carolina, secured by a mortgage on land in South Carolina, and is now being enforced in South Carolina; and we have not been referred to any case where the *lex loci* and the *lex fori* were the same, in which the plea of the usury law of another State, although the State of the *lex solutionis*, was enforced upon the principle of "comity."

It is proper that only so much of the land should be sold as is necessary to pay the debt and costs, and that it should be

sold in such parcels as will secure the best price. If the point had been made below, we have no doubt the decree of foreclosure would have provided for it. We think that it was stated at the bar that no objection would be made to such course. If the parties cannot agree as to the parcels, let the officer to whom it was referred to estimate the amount due, make such recommendation on the subject as he may deem proper.

The judgment of this court is that the judgment of the Circuit Court be affirmed.