OPAL P. G. FRAZIER v. LLOYD MANUFACTURING COMPANY.[1]

July 13, 1906.

Nos. 14,779—(158).

**Master's Failure to Warn Servant.**

Evidence sufficient to sustain the charge of negligence on the part of the master in not warning an inexperienced employee of the danger, or instructing him with reference to the adjustment of the table, gauge, condition of the revolving knives, and the use of a guard for the knives, of a jointing machine.

**Evidence of Defects.**

Evidence also tends to show that the machine was not properly adjusted nor in good working order when the employee was set to work.

**Assumption of Risk.**

It does not appear conclusively that respondent was an experienced workman, understood the condition of the machine, and assumed the risk of operating it.

Action in the district court for Hennepin county to recover $10,000 for personal injuries. The case was tried before Simpson, J., and a jury, which rendered a verdict in favor of plaintiff for $2,000. From an or-

[1] Reported in 108 N. W. 819.

der denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

M. H. Boutelle and A. M. Higgins, for appellant.

Nye & Deutsch, for respondent.

LEWIS, J.

This action is based on the claim that respondent was injured when in the employ of appellant while operating a machine known as a "jointer," and that when set at work the machine was in a defective condition, in that the gauge was not at right angles with the revolving knives, the receiving table was negligently placed higher than the feeding table, and the knives were dull; and also that respondent was not warned or instructed as to the danger of operating the machine. It is also charged that the revolving knives were left unprotected and without proper guard. Respondent having recovered a verdict of $2,000, appellant moved for a new trial, and for judgment notwithstanding the verdict.

Respondent entered appellant's employ February 1, 1905, and the first four days worked on the jointer which later caused his injuries. He admits that at that time the foreman put him to work, and that a guard was used, but states that the foreman adjusted the gauge to give the requisite bevel to the boards and showed him how to run them through the machine by doing a few himself; that after four days of work on the jointer he was put to work on another machine called the shaver, where he worked until March 2, when he was directed by the foreman to work on the jointer and run through a lot of short boards, seven or eight inches long, for the purpose of putting a proper bevel on the edge so they would fit as the heads of little wheelbarrows; that the foreman showed him how to run the boards through, three pieces at a time, but gave him no instructions as to the adjustment of the machine or the use of the guard, and he went to work on the machine supposing it to be properly adjusted. Respondent's explanation of the accident is that, while pushing the boards through, three at a time, they seemed to strike some obstruction, jolted away from him, and threw his hand into the knives, cutting off two fingers and injuring the others.

The evidence that the machine was not in proper condition consisted in the peculiar manner of the accident, which in itself, it is claimed,

indicated the defects stated, and the testimony of the witness George Pinz that he examined the knives shortly after the injury and found them nicked and dull, that the gauge was not at right angles with the knives, and that the receiving table was about $1/64$ of an inch higher than the level of the knives. On cross-examination this witness stated he was nineteen years old, that he had had eight or nine months' experience in the woodworking business, and had worked at the jointer in question; admitted that it was a common thing to have the gauge thrown out a little during work on the machine, and that it could be readily readjusted by means of a certain screw; that usually the man running the machine sets the gauge and adjusts it properly to the work he is doing, that he had done so himself, and had seen other men in the factory do so, and guessed it was customary in all woodworking manufactories for the men to set the machines they were at work on; that the operator has a file with which he just touches the edges of the knives from time to time as they become dull; and that he had never seen a guard on the jointer in question.

On the part of the defense, the foreman testified that respondent represented himself to be experienced in the use of such machines; that the workman was expected to adjust the machine himself if it got out of alignment; that a guard was used upon certain occasions when running boards through on their edges; and that respondent knew all about it and when and how to use the guard, but admits that on this particular occasion he did not instruct him to use the guard. The evidence on behalf of appellant was to the effect that the table and gauge were easily adjusted by means of screws, and were properly adjusted at the time of the accident, and that the machine was in no respect defective.

Respondent denied that he represented himself to be an experienced workman; stated that he was twenty three years old; about a year and a half before his employment by appellant he worked for a concern by the name of Muckle a little over a year, six months as shipping clerk, and the remaining time in the woodworking department sawing crates for the shipping department, worked on a jointer for about half a day and on another machine called a shaper, about two days; and that thereafter and prior to his working for appellant he was learning the trade of boiler maker.

The gauge was adjustable, placed at right angles with the knives, and made to stand directly upright on the tables, or, if required, to lean on one side in order that, when the boards passed through, the proper bevel would be given to their edges by pressing the boards against the gauge. It does not appear how any disturbance would follow from the fact that the gauge was not exactly at right angles with the knives, but there is evidence in the case from which it may be inferred that, if the receiving table was appreciably above the level of the knives, or if the knives were nicked and dull, then in passing light and short boards through the machine the tendency would be to stop, jar, or jolt the boards unless held firmly in place by the operator.

If it be true that respondent was not an experienced workman, and on March 2 was set to work on this jointer in such defective condition and directed to put through short and light boards, liable to be jolted out of his hands, and he was not warned of the danger or properly instructed as to the use of the guard, or otherwise how to protect himself, then the claim of negligence is sustained. We consider the evidence sufficient to indicate that the machine was not in proper order at least in respect to the position of the receiving table and the condition of the knives, but that respondent did not fully understand the conditions, assume the risks, or contribute to his own injury, is not very satisfactorily shown. Still from respondent's short experience with such machines, and not having been advised to use a guard on this particular occasion, it is fairly a debatable question whether or not he appreciated the risk of attempting to put the short boards through without the guard. Admitting that an experienced workman would assume the risk if he chose to run such boards through without a guard rather than go to the trouble of putting it on, a new employee, with limited means of observation, could hardly be held accountable, as a matter of law, for failing to resort to the safer method under the circumstances. Unless informed that it was his duty to keep the knives sharp, and see that the receiving table was on a level with the knives, he would have a right to assume that when he was called from his work and assigned to duty on the jointer that it was in proper working order.

The trial court submitted the determination of the facts to the jury in accordance with the well-known principles of law governing the sub-

ject, and we are unable to discover any substantial error. Appellant's attack upon the instructions is based upon the claim that it appears conclusively from the evidence that the adjusting of the gauge and table, and the sharpening of the knives, constituted a mere detail of the work to be performed by the employee, and if the jointer was a proper appliance, or mechanism, no continuing duty rested upon the master to follow it up from day to day to see that it was properly adjusted and the knives sharpened. And, again, that respondent was employed as a general servant to work in the woodcarving department in connection with all the other employees, including the foreman, and when set to work upon the jointer it was his duty to take the machine as it was, operate it, and, if the foreman adjusted it for that particular work and left it in a defective condition, then such act of negligence was the act of a co-employee.

It is not true in all cases of employment that the adjustment of machines, as occasion arises, is a mere matter of detail assumed by the workman. As already stated, it does not conclusively appear that respondent knew all about this machine and understood the difficulties of operating it, and that it was a part of his duty to keep the knives sharpened, and to adjust the table and gauge when occasion arose. On the contrary, there is evidence which tends to show that for the greater part of his time while in appellant's employ he was engaged in other and different work upon some other machine, and that the master, through his representative, undertook, as a part of his duty of supervision, to adjust the machine and get it on the proper level, not only upon the first days of his employment, but also at the time of the accident.

Another assignment is directed to the instructions as to the guard. A guard was furnished, but could only be used upon certain occasions when boards were being run through upon edge; it not being necessary at such time to use the entire portion of the knives, and the guard was fastened down with a set screw over that portion of the knives not in use. Respondent admits that during the first day of his employment he used the jointer with a guard, and that it was not on the machine at the time of his injury, but insists that he received no instructions as to when it was proper, and when not, or as to how to adjust it. Under such circumstances, it cannot be held as a matter of law that

appellant fulfilled its duty with respect to the guard by the mere furnishing of a guard and having it in place where the workmen could get it. The duty to protect revolving knives of that character is statutory, and, if respondent was an inexperienced employee and did not properly understand the use of the guard, then it was the duty of the master to instruct him in that respect, and it was not error to instruct the jury that respondent could not recover if he knew that a guard was furnished and understood its use, implying that it was the duty of appellant to so instruct him.

Order affirmed.