13425

CANTEY, ADM'R, v. PHILADELPHIA' LIFE INSURANCE CO

(164 S. E., 609)

*Messrs. Kreps & Taylor,* for appellant,

*Messrs. Thomas, Lumpkin & Cain,* for respondent,

June 10, 1932.

The opinion of the Court was delivered by Mr. Justice Bonham.

This case was tried in the County Court for Richland, Judge Whaley presiding. At the close of all the testimony, each of the litigants moved for directed verdict. After hearing argument, his Honor directed a verdict for the defendant. From the judgment entered upon this verdict, the plaintiff appeals.

A brief recital of the facts out of which the litigation grew is taken from the pleadings:

The complaint alleges that the defendant issued its policy No. 95875 on the 19th day of August, 1927, whereby it insured the life of William M. Joseph in the sum of $1,000.00 for a period of 27 years, payable upon the death of the insured at any time prior to the 19th of August, 1954, or to the insured if he be alive on that day and the policy is in force; that the policy was delivered to the insured in North Carolina; that the insured died in Columbia, S. C., on or about the 20th day of December, 1927, that demand was duly made upon the insurance company for blanks with which to make proofs of death, but defendant refused to furnish them, and refused the demand for payment of the amount of the policy.

For a first defense: The defendant admitted that the policy was issued as alleged, and that the contract was written, issued, and delivered as a contract under the laws of the State of North Carolina; that defendant has no knowledge of the date of the death of the insured, but that, if he died on the 20th day of December, 1927, the policy had lapsed for non-payment of premiums, and was null and void.

For a second defense: That the policy was written and dated August 19, 1927, and only one quarterly premium was paid which carried the policy in force up to and including the 19th day of December, 1927, and if, as alleged by the complaint, the insured died December 20, 1927, the policy was lapsed, because no other premium was paid.

For a third defense: That the policy was written, issued, and delivered as a North Carolina contract, and is governed by the laws of that state and the decisions of the Supreme Court of that state to the effect that, the death of the insured having occurred after the policy had lapsed, no liability against the insurance company existed therein.

Plaintiff proved the application and the policy, and the death of the insured on December 20, 1927; also the receipt attached to the policy for the first quarterly premium. The defendant's counsel admitted that the policy was dated and mailed in Philadelphia August 19, 1927, to one of its agents in Winston-Salem, and that it would take such a letter five days to reach its destination and be delivered.

Defendant offered in evidence Section 6287, Article 3, c. 106, and Section 6465, Article 21, c. 106, Consolidated Statutes of North Carolina, which are as follows:

Article 3, Section 6287, Consolidated Statutes of North Carolina, volume 2: "State law governs insurance contracts. All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein; and all contracts of insurance the applications for which are taken

within the state shall be deemed to have been made within this state and are subject to the laws thereof."

Article 21, Section 6465, Consolidated Statutes of North Carolina, volume 2: "Notice of nonpayment of premium required before forfeiture. No life insurance corporation doing business in this state shall, within one year after the default in payment of any premium, installment, or interest, declare forfeited or lapsed any policy hereafter issued or renewed and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year or less, nor shall any such policy be forfeited or lapsed by reason of nonpayment, when due, of any premium, interest, or installment or any portion thereof required by the terms of the policy to be paid, within one year from the failure to pay such premium, interest, or installment, unless a written or printed notice stating the amount of such premium, interest, installment, or portion thereof due on such policy, the place where it shall be paid, and the person to whom the same is payable has been duly addressed and mailed, postage paid, to the person whose life is insured or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known postoffice address in this state, by the corporation or by any officer thereof or person appointed by it to collect such premium, at least 15 and not more than 45 days prior to the day when the same is payable. The notice shall also state that unless such premium, interest, installment, or portion thereof then due shall be paid to the corporation or to the duly appointed agent or person authorized to collect such premium, by or before the day it falls due, the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy, as in the contract provided. If the payment demanded by such notice shall be made within its time limit therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payment;

and no such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of 30 days after the mailing of such notice. The affidavit of any officer, clerk, or agent of the corporation, or of any one authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy, shall be presumptive evidence that such notice has been duly given. No action shall be maintained to recover under a forfeited policy unless the same is instituted within three years from the day upon which default was made in paying the premium, installment, interest, or portion thereof for which it is claimed that forfeiture ensued."

Defendant offered in evidence depositions of certain of its officers to prove that the policy in question was written pursuant to the application therefor made, which was dated and executed in the State of North Carolina: That the policy was written, issued, and dated in Philadelphia, Pa., August 19, 1927; that the second quarterly premium was due on or before November 19, 1927, but was not paid on that date, nor within the grace period of the policy, which was 30 days; that the policy lapsed for non-payment of this premium; that the company, in regular course of business, sent a premium notice to the insured to his last-known address on October 18, 1927, notifying him that the second quarterly premium would be due November 19, 1927; there was proof by defendant's general agent for North Carolina that the grace period of a policy is computed from the date when the premium is made payable under the policy until the same date of the next month, so that, when premiums fall due in months having 31 days, the grace period allowed is 31 days, and in months having 30 days and less the grace period is 30 days. The times for the payment of quarterly premiums fixed by the policy are August 19, November 19, February 19, and May 19 of each policy year.

The exceptions are 11 in number, but they cover, in differing statements, only two cardinal questions, which are:

First, is this contract of insurance to be governed and construed by the laws, and the decisions of the Courts of North Carolina? Second, had the policy lapsed at the time of the death of the insured? Under these two heads, all of the vital issues made by the pleadings and the proof will be considered and determined.

Section 1 of Article 4 of the Constitution of the United States provides that: "Full faith and credit shall be given in each state to the public Acts, records, and judicial proceedings of every other state."

The defendant has offered in evidence the statute laws of North Carolina pertaining to and governing the specific questions involved in this appeal, relating to and regulating matters of insurance arising therein. Section 6287, Article 3, c. 106, Consolidated Statutes of N. C., provides that: "State law governs insurance contracts. * * * All contracts of insurance the applications for which are taken within the state shall be deemed to have been made within this state and are subject to the laws thereof."

There is no dispute that the application for insurance in the present case was taken in North Carolina; there is no dispute that the policy when issued in Philadelphia was sent to the agent of the company and delivered to the insured at his place of residence, Winston-Salem, N. C. He died at a hospital in Columbia, S. C., but there is nothing in the pleadings nor in the proof to show, or even suggest, that he had abandoned his residence in North Carolina. It is a fair inference that he retained his citizenship in that state.

In the case of *Columbian Building & Loan Association v. Rice,* 68 S. C., 236, 47 S. E., 63, 64, 1 Ann. Cas., 239, Mr. Justice Woods, speaking of the contract of insurance, said:

"Section 4, Article 11, * * * is as follows: 'Members may, if they desire, make monthly payments on stock to the local treasurer, but such local treasurer shall be the agent of the members, and not of the association.'

"The defendants insist this is a mere subterfuge to avoid the usury laws of the state, and, even if it is not, the contract is nevertheless to be construed as a South Carolina contract. A contrary view was taken by this Court in *Pollock v. Association,* 51 ·S. C., 420, 29 S. E., 77, 64 Am. St. Rep., 683; *Turner v. Association,* 51 S. C., 37, 27 S. E., 947, and *Tobin v. McNab,* 53 S. C., 75, 30· S. E., 827. It is true in *Mears v. Finlayson,* 55 S. C., 105, 32 S. E., 986, Chief Justice McIver expressed dissatisfaction with the decision of *Pollock v. Association, supra,* but expressly said that the point we are now considering was not involved in the case he had under discussion. In the later case of *Association v. Powell,* 55 S. C., 320, 33 S. E., 355, the provisions of the mortgage and of the by-laws, so far as they relate to this question, were practically the same as those involved in this case; and it was there held by a unanimous Court that the contract was to be performed in Georgia, *and the laws of that state must govern its validity and construction.*" (italics added.)

"It is a well-recognized principle of law in this State, as well as other jurisdictions, that the law of the place where a contract is made determines its validity. This rule is well and succinctly stated, as follows: "The validity and construction of a contract are determined by the law of the place where it is made. Accordingly, it is quite generally held that a contract valid in the place where made is valid everywhere; and that a contract invalid where made is invalid everywhere; and the validity or invalidity of a contract so determined will, on principles of comity, be recognized wherever it is sought to be enforced, even though the law of the forum would have determined otherwise if applied.' "

5 Cal. Jur., 449. *Mercantile Acceptance Co. v. Frank (In Banc)* 203 Cal., 483, 265 P., 190, 57 A. L. R., 697 and numerous cases cited.

"In the absence of special provision in the contract to the contrary, a contract is to be construed in accordance

with the law of the state where it is made." *Coderre v. Travelers' Ins. Co.,* 48 R. I., 152, 136 A., 305, 306; 54 A. L. R., 512, citing *Leonard v. State Mut. Life Assur. Co.,* 27 R. I., 121, 61 A., 52, 114 Am. St. Rep., 30.

Respondent's counsel cite in their brief the case of *Rosemand v. So. Ry. Co.,* 66 S. C., 91, 44 S. E., 574, 576, in which the Court quotes from the case of *Thornton v. Dean,* 19 S. C., 583, 45 Am. Rep., 796, the following: "* * * But in the interpretation of a contract it has been established by usage that the *lex loci contractus* must govern. The rule is clearly stated by Chancellor Kent, with its qualifications: 'Then it may be laid down as the settled doctrine of public law that personal contracts are to have the same validity, interpretation, and obligatory force in any other country which they have in the country where they are made.'"

There was no error in the holding by the presiding Judge that the contract of insurance in this case was to be governed and interpreted by the laws and decisions of the Courts of the State of North Carolina.

Did the policy lapse for the non-payment of a premium before the death of the insured? To answer this question it is necessary to determine the question: On what date did the premium fall due? Is the time to be computed from the delivery of the policy, or from the date fixed in the policy when the premiums should become due and payable?

Appellant argues that the application upon which the policy was issued is a part of the contract of insurance and that the application provides that the policy is not to become effective until the same is issued, delivered, and the premium paid; that the policy was dated August 19, 1927, was issued and mailed that day from Philadelphia; that it is admitted that it could not reach Winston-Salem, N. C., and be delivered, in due course, of mail, under five days; that therefore the policy could not have been delivered and the premium paid before the 24th day of August; and that

it follows that the next quarterly premium did not fall due till November 24, and the 30 days of grace would carry it till December 24, and, as the insured died December 20, the policy had not lapsed. The policy in express terms provides for quarterly premiums to be paid August 19, November 19, February 19, and May 19 of each policy year during the life of the policy, with a grace period of 30 days for the payment of each premium. In other words, appellant contends that the quarterly premium did not fall due November 19, but five days later, since the policy was not delivered until five days after August 19. Reliance is had in support of this contention upon the case of *Davis v. Ins. Co.*, 125 S. C., 381, 118 S. E., 536. That case emphasizes the wisdom of having fixed and definite dates stated in the policy of insurance upon which premiums are due and payable. There must be a certainty in such dates, else there would be a controversy in every such case as this growing out of the uncertainty of the date of delivery of the policy. It might not be possible to prove the date of delivery; the agent and insured both being dead. Then resort must be had to conjecture as in this case. It might be that the insured was unable to pay the premium when the policy was presented to him, and some delay ensued in the delivery of it. It might be that the insured was sick when the policy was brought to be delivered to him and it could not be delivered till he recovered; or it might be that he was absent from home and the delivery was delayed. Consider the confusion which would ensue under such conditions in proving when a premium falls due.

We do not think the *Davis case* is authority in the present case. That was a policy for *one* year on an automobile. Mr. Justice Cothran, delivering the opinion of the Court, said: *"The obvious intention * * * was to provide insurance for a year."* (Italics added.)

He held that the insured was entitled to the time for which he had paid. There, time was of the essence of the

contract. In the case at bar the policy was issued to run for a long period of years, during which time many quarterly premiums were expected to be paid. It was in contemplation of the parties that there would be such payments for a long period of years, and it was to avoid the very confusion which would arise if appellant's contention was sustained that they agreed that there should be a definite, fixed date for the payment of these premiums.

That such an agreement is valid and binding is shown by the majority of text-writers and the decisions of the Courts.

Aside from this, the decisions of the Courts of North Carolina are controlling in the construction of this contract of insurance. The case of *Wilkie v. New York Life Ins. Co.,* reported in 146 N. C., 513, 60 S. E., 427, 428, has direct bearing on the issues involved. In that case the policy was dated December 2, 1901. There was indorsed on the policy "Insurance year begins on November 22d."

Quoting from the opinion: "The plaintiff contends that as the policy was issued on the 2d day of December, 1901, and as the two full premiums for two years had been paid, this carried the insurance to December 2, 1903, and that by the terms of the contract, the insurance was automatically continued * * * for two years and two months, which would carry it to February 2, 1906, and, as the insured died on January 26, 1906, the policy was in full force and effect at the time of his death. The defendant, on the contrary, insists that the date from which the count of time must be made is November 22, 1901, according to the stipulations of the contract."

The Court reached this conclusion: "As between these two contentions, we are with the defendant, and we think, therefore, that the Judge was right in his decision upon the case agreed."

Further in the same opinion the Court said: "Payment being required in advance, the premium paid when the policy was actually issued would go until the next pay day should

come, that is, until November 22, 1902. The fact that this would be 10 days short of a full year from the date of the policy cannot be allowed to affect the case, since payment of premiums, being but parts of a fixed total, are not to be considered strictly as made for a full year, but as payments due on a particular day of the year. This question was directly presented in an action upon a policy worded substantially like the one now being construed, and the Court held that the fact that the policy having been issued and the first premium paid on a day subsequent to the pay day *did not change the due date of premiums as fixed by the express words of the contract* (italics added)"—citing *Bryan v. Ins. Ass'n,* 21 R. I., 149, 42 A., 513. The same point was similarly decided in *Frazier v. Lloyd Mfg. Co.,* 98 Minn., 484, 108 N. W., 819.

Again from the same case: "We have not referred to the fact that the insured, Clarence Wilkie, accepted the policy with notice from the defendant of the initial day of each insurance year, because we have not found it necessary to do so in order to arrive at a conclusion as to the proper meaning of the contract. If he was thus notified, it would seem to have been nothing but right to return the policy, if it was the wrong date, and refuse to accept another, unless it conformed to the terms of the application made to the company."

These views are sustained in the case of *Harvey v. Union Central Life Ins. Co.,* reported in 45 F. (2d), 78, 81, which appeal was heard in the United States Circuit Court of Appeals for the Fourth Circuit by Circuit Judge Parker and District Judges Watkins and Soper. Judge H. H. Watkins of the District Court of the Western District of South Carolina wrote the leading opinion. The action of the lower Court was reversed, but that was done on other grounds than those we are discussing. The opinion is authority for the views we here express. The opinion holds, among other things:

"There can be no doubt under the decisions that the requirement to pay premiums annually in advance on October 22 was a valid and binding agreement. The minds of the parties definitely met upon that point, and there is nothing in the record to indicate that the insured was in any way misled. Failure to pay any annual premium on that date resulted, after 30 days' grace, in lapse."

"It is well settled that provisions of this kind are valid and enforceable, and that under them the failure to pay any installment is a sufficient defense to an action on the policy to recover a loss happening during the time when such premium was then due and unpaid." 14 R. C. L., § 149, p. 977, and numerous cases there cited.

"If the parties enter into such a contract, it is binding upon them. The Court cannot make a new contract for them or refuse to enforce the one they have made for themselves." *Mack v. Liverpool & L. & G. Ins. Co.*, 329 Ill., 158, 160 N. E., 222, 225, 57 A. L. R., 1043.

The contract there spoken of was one to the effect that a policy of insurance should become void if foreclosure proceedings are begun, but the principle is the same. We have not considered the question whether the provision of the North Carolina statute that such an action would be barred in three years applied here. The conclusions which we have reached render that question an academic one now.

It is the policy of a respectable insurance company to keep alive its insurance. It does not desire forfeitures. The greater the volume of its life insurance, the greater its income from premiums. Therefore it encourages its policyholders to maintain their policies in force, and to this end gives them notice of the time when their premiums fall due. In this case the uncontradicted evidence shows that the company gave to the insured on October 18, 1927, notice that his next quarterly premium would fall due November 19, 1927. When the insured failed to pay it on or before that day, he was in arrears, but the company, as a matter of

grace, had provided that he should have 30 days more in which to pay it, viz., till December 19, 1927. But he did not avail himself of it. So the policy lapsed at the end of that day.

The decision of the lower Court is in accord with the express terms of the contract and the law applicable thereto.

The appeal is dismissed, and the judgment of the lower Court is affirmed.

MR. JUSTICE CARTER concurs.

MR. CHIEF JUSTICE BLEASE: I concur in the result of the opinion of Mr. Justice Bonham, upholding the direction of verdict by the trial Judge in favor of the insurance company, on the ground that the contract of insurance was subject to the laws of the State of North Carolina. The decision of the Supreme Court of that state, in the case of *Wilkie v. New York Life Insurance Co.,* 146 N. C., 513, 60 S. E., 427, and the statutes of North Carolina, reproduced in the opinion of Mr. Justice Bonham, sustain the conclusion of the trial Court.

If the case were controlled by the laws of South Carolina, I would be inclined to the view that the directed verdict in favor of the insurance company in the lower Court was erroneous, basing this opinion upon the case of *Davis v. Home Insurance Co.,* 125 S. C., 381, 118 S. E., 536, where this Court strongly approved the holdings of the Oregon Court in the case of *Stinchcombe v. Insurance Co.,* 46 Or., 316, 80 P., 213. While the *Davis case* involved a policy of insurance issued upon an automobile, and not a life insurance policy as is involved here, the *Stinchcombe case,* upon which the conclusion of the *Davis case* very much rested, did involve a policy of life insurance. The reasoning of the *Stinchcombe case* appeals strongly to me.

One of the appellant's exceptions (No. 10) questioned the correctness of the ruling of the trial Court in permitting the respondent, insurance company, to introduce in evidence the decision of the North Carolina Court in the case of

*Wilkie v. New York Life Insurance Co., supra.* It may be that the law book containing this decision was not properly introduced, but the exception cannot be considered here, since the appellant has not argued it, and, under our rules, that exception is to be considered abandoned. In all probability, the learned counsel of the appellant, who very ably argued this cause in this Court, came to the conclusion that, even if the exception should be sustained, it would not avail their client's interest, for on a new trial respondent would take care to see that the decision in the *Wilkie case* was introduced in the proper manner and at the proper time. Counsel no doubt very wisely thought that, if this Court reached the conclusion that the laws of North Carolina and the decisions of the Court of that state supported the contention of the insurance company, their client's case would necessarily fall.

Mr. Justice Stabler concurs.