14622

BROWN v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

(195 S. E., 552)

246

October, 1936.

*Messrs. Carlisle, Brown & Carlisle* and *Johnston & Williams*, for appellant,

*Messrs. Thomas, Lumpkin & Cain* and *Nicholls & Russell*, for respondent,

February 25, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The plaintiff, Beatrice C. Brown, hereinafter designated as the appellant, sought to recover the sum of $2,999.00, with interest from April 20, 1933, which she alleges is due her as the beneficiary in a policy of life insurance written by the defendant-respondent, the Mutual Life Insurance Company of New York, on her late husband, Jahew Y. Brown, who died on March 4, 1932, waiving in her complaint any right to recover any sum in excess of the amount prayed for.

Pursuant to a written application dated January 10, 1927, a policy for $5,000.00, dated February 10, 1927, was executed and issued by the respondent, but was not delivered to the insured until March 22, 1927, in consideration of an annual premium of $318.40, payable in quarter-annual premiums of $84.40 each. In the early part of 1928 the insured discovered that he had erroneously reported his age in the application as fifty-six, when in fact he was only fifty-three,

and on March 26, 1928, in order to adjust the policy to his true age the policy was reissued in the amount of $5,752.00, and the quarter-annual premium was reduced from $84.40 to $84.38.

The policy as rewritten, and with reference to the amount and due dates of the premiums, contains the following: "This policy is issued in consideration of the application and of the payment of the first premium of *Eighty-four and 38/100* Dollars, receipt of which is hereby acknowledged, and of the payment to the Company of *Eighty-four and 38/100* Dollars on each *Tenth* day of *May, August, November and February* hereafter until the death of the Insured."

Immediately following the above is this statement: *"This policy takes effect as of February 10th, 1927."*

The quarter-annual premiums becoming due under said policy were settled on said quarterly dates or grace periods, either by the payment of cash with the aid of dividends, or loans up to, but not including, February 10, 1931. Therefore the policy remained in force for four full years. In the meantime the insured had borrowed upon the sole security of the policy the sum of $496.31, upon which interest of $29.77 accrued to February 10, 1931, making the total outstanding indebtedness as of February 10, 1931, the sum of $525.90. Neither the premium, loan, nor loan interest maturing on February 10, 1931, was paid when due or within thirty days' grace and the insured did not within three months thereafter elect one of the given options controlling the disposition of the net cash surrender value of the policy. Accordingly, and in conformity with the terms of the said policy, the net cash value thereof amounting to $106.94, after the deduction of the surrender charge, was used for the purchase of extended term insurance in the amount of $5,352.00 for a term of 353 days.

It is alleged in the complaint that the policy of insurance was in full force and effect at the time of the death of the insured, which occurred on March 4, 1932, and that due demand had been made for the payment of the proceeds of

said policy, and such demand had been refused. The defendant's answer alleged that the policy had become lapsed for nonpayment of the annual premium becoming due on February 10, 1931, and no option having been elected by the insured, the net cash value thereof had been applied to the purchase of extended term insurance in the amount of $5,-352.00, for a term of 353 days from February 10, 1931, or to January 29, 1932, on which date the insurance expired, and, therefore, the policy became void and of no effect prior to the date of the insured's death. At the conclusion of the evidence both plaintiff and defendant made motions for direction of verdict in their respective favors. The case was submitted to the jury, but the trial Judge, Honorable G. Dewey Oxner, reserved the right to consider and determine the issues involved, and to direct a verdict if he later decided that either of the motions for direction of verdict should be granted. This reservation was duly consented to by counsel in open Court. The jury returned a verdict for the plaintiff, but Judge Oxner, at a later date, after a careful study of the facts and applicable law, concluded that defendant's motion should be granted, and plaintiff's motion refused. Whereupon the verdict of the jury was set aside, and judgment entered for respondent.

The principal question raised by the issues is: "Was the insurance in force at the death of the insured?" However, the determination of this question requires the answering of two dependent questions, to wit:

(a) Does the contract of insurance permit the defendant insurance company to deduct a surrender charge from the reserve value of the policy before ascertaining the amount available for application under the nonforfeiture provisions thereof?

(b) Does the term of extended insurance commence to run from the anniversary of the date of the delivery of the policy, or from the due date of the premium in default?

In the event the respondent does not have the right to deduct a surrender charge, then there would be an additional

amount of money to be applied as a premium sufficient to have carried the extended insurance over and beyond the date of the death of the insured.

Section 6 of the policy of insurance, under the heading "Cash Value," is in part as follows:

"At any time after at least three full years' premiums have been duly paid but not later than three months after default in payment of premium, this policy may be surrendered for its net cash value. Such net cash value shall be the cash value as defined below less any indebtedness to the company hereon.

"(a) If all past due premiums have been paid, (1) the cash value on any anniversary of the date of the policy or any premium due date other than an anniversary shall be the reserve at such time for the face amount of this policy and for any dividend additions hereto increased by any accumulated dividend deposits and less a surrender charge of not more than one and one-half per cent of the face amount of this policy, or (2) the cash value on a prior date shall be the cash value mentioned in (1) less interest thereon at the rate of six per cent a year."

Section 7 of the policy, under the heading "Options on Lapse," is in part as follows:

"(a) Continued Term Insurance. If any premium remain unpaid at the end of the days of grace, and if at least three full years' premiums have been paid, this policy will, without action on the part of the Insured, continue, as from the due date of such premium in default, as paid-up non-participating term insurance.

"The amount of such term insurance shall be the face amount of this Policy increased by any dividend additions and by any dividend deposits and decreased by any indebtedness to the Company on this Policy. *The term shall be such as the net cash value at such premium due date provided for in Section 6* (adjusted for any later loans, surrender of dividend additions, or withdrawal of dividend deposits) applied as a net single premium will purchase." (Italics added.)

The policy of insurance does not define "surrender charge," but a construction thereof may be formulated from the evidence of the respondent. Insurance business is based upon the law of averages. Normally, only good risks permit their contracts of insurance to lapse, thereby raising the percentage of risk of that group remaining in force. The remaining group of policies in force, being closer to the time of death, and closer each passing day, should have a higher cash reserve than the average of the total group. Then, the greater portion of the reserve fund should be available to those who continue to pay their premiums and thereby augment the reserve fund than to those who default in the payment of premiums and exercise the options under the policy or obtain extended insurance, the choice of any option or extended insurance, without the further payment of premiums thereby depleting the total amount of the reserve fund. The surrender charge is then made to offset the depletion of the reserve fund in order that those who continue to pay shall receive from the reserve fund the same benefits as if all policies had remained in force. From an actuarial standpoint the charge is made to take care of the increased mass or group load of mortality necessarily placed upon those that remain by virtue of the falling off of those in normal health who stop payment.

It has been uniformly held that the exaction of a surrender charge from the reserve, when provided for in the policy, there being no prohibitory statute, is valid. 37 C. J., 514.

The policy provides that the cash value on any anniversary of the date of the policy or any premium due date, other than an anniversary, shall be the reserve at such time for the face amount thereof, and for any dividend additions thereto increased by any accumulated dividend deposits and less a surrender charge of not more than $1\frac{1}{2}$ per cent. of the face amount of the policy. The record shows that the surrender charge exacted was $1\frac{1}{4}$ per cent. of the face of the policy, and therefore within the limits prescribed.

The appellant claims that the right to deduct a surrender charge is restricted to the cases in which the policy is actually and manually surrendered to the company in exchange for its cash value. This contention is without merit for the reason that the options to surrender the policy for its cash value or for paid-up insurance, or for extended term insurance, are all dependent upon, in amount or term, the amount of the *cash value* remaining in the policy. As such cash value is the residue of the reserve, plus dividend additions or deposits, less the outstanding indebtedness and a surrender charge of not more than 1½ per cent., such surrender charge must be considered before any of the options can be exercised.

We now pass to the second question and determine the date from which the term of extended insurance commences to run, from the anniversary of the date of the delivery of the policy, or from the due date of the premium in default.

It is the contention of appellant that the term of extended insurance should commence to run from March 22, 1931, which date is the anniversary of the date of the delivery of the policy, and if so calculated, the insurance was in force on the date of the insured's death, notwithstanding the deduction of a "surrender charge." The contention of respondent is that the term of extended insurance should properly begin to run from February 10, 1931, which is the due date of the premium in default.

We have hereinbefore set out a portion of Subdivision A, Section 7 of the policy, under the heading "Options on Lapse," and by reference thereto it will be seen that the term insurance is to continue "as from the due date of such premium in default, as paid-up non-participating term insurance."

In discussing this question, we quote the following portion of Judge Oxner's order, and adopt the same as a part of this opinion:

"It is now settled law that the parties are bound by the terms of their contract and in the absence of obscurity or

ambiguity the terms of the contract will be understood and enforced in their plain and clear sense. *Parker v. Jefferson Standard Life Insurance Company*, 158 S. C., 394, 155 S. E., 617. * * *

"The parties have the right to make their own contracts and when such contracts are capable of clear interpretation the Court's duty is confined to the enforcement thereof; it cannot exercise its discretion as to the wisdom of such contract or substitute its own for that which was agreed upon. As shown by the foregoing excerpt from the policy it was expressly stipulated that in the event the policy became lapsed, and no other option was exercised that the insurance would continue, as from the due date of such premium in default, as paid-up non-participating term insurance. The parties having by their solemn agreement fixed the date from which the extended term insurance should begin to run, such agreement will be recognized and given effect. The overwhelming weight of authority supports the construction of the contract placed upon it by defendant. It has been generally held that when a policy, conditioned to take effect on the payment of the first premium, expressly specifies the date from which the premium period is to be computed, and makes that date the day on which the recurring premiums are due and payable, such date must control, regardless of the date on which the policy is delivered. See exhaustive annotations on this subject contained in 6 A. L. R., 774, 32 A. L. R., 1253, and 80 A. L. R., 966.

"It is true that we are dealing here with the date from which extended insurance shall commence rather than the day of recurring premium matures, but there is no difference in principle. Both are a matter of agreement. * * * "

The case of *Cantey, Adm'r, v. Philadelphia Life Ins. Co.*, 166 S. C., 181, 164 S. E., 609, 611, is in principle similar to the present issue. The point therein was stated by the Court as follows: "Did the policy lapse for the nonpayment of a premium before the death of the insured? To answer this question it is necessary to determine the question: On what

date did the premium fall due? Is the time to be computed from the delivery of the policy, or from the date fixed in the policy when the premiums should become due and payable?"

There are two opinions filed in the *Cantey case,* the prevailing opinion being written by Justice Bonham, concurred in by Justice Carter, and an opinion by former Chief Justice Blease, concurred in by Justice Stabler, now Chief Justice. The Court held the premium to fall due from the date fixed in the policy, and not to be computed from the date of the delivery of the policy. The point at issue in the *Cantey case* was controlled by the decisions of the Courts of North Carolina, and the case of *Wilkie v. New York Life Ins. Co.,* 146 N. C., 513, 60 S. E., 427, 428, 430, was cited as decisive. Former Chief Justice Blease and Justice Stabler were of the view if it were not for the fact the contract of insurance was subject to the laws of the State of North Carolina, the direction of verdict for the insurance was erroneous, basing their opinion upon the case of *Davis v. Home Ins. Co.,* 125 S. C., 381, 118 S. E., 536, 537. Mr. Justice Bonham, aside from the decisions of North Carolina, in concluding the date fixed in the policy, and not the delivery-date, to be controlling, reasoned as follows:

"Reliance is had in support of this contention upon the case of *Davis v. Ins. Co.,* 125 S. C., 381, 118 S. E., 536. That case emphasizes the wisdom of having fixed and definite dates stated in the policy of insurance upon which premiums are due and payable. There must be a certainty in such dates, else there would be a controversy in every such case as this growing out of the uncertainty of the date of delivery of the policy. It might not be possible to prove the date of delivery; the agent and insured both being dead. Then resort must be had to conjecture as in this case. It might be that the insured was unable to pay the premium when the policy was presented to him, and some delay ensued in the delivery of it. It might be that the insured was sick when the policy was brought to be delivered to him and it could not be delivered till he recovered; or it might be that

he was absent from home and the delivery was delayed. Consider the confusion which would ensue under such conditions in proving when a premium falls due.

"We do not think the *Davis case* is authority in the present case. That was a policy for *one* year on an automobile. Mr. Justice Cothran, delivering the opinion of the Court, said: *'The obvious intention * * * was to provide insurance for a year.'* (Italics added.)

"He held that the insured was entitled to the time for which he had paid. There, time was of the essence of the contract. In the case at bar the policy was issued to run for a long period of years, during which time many quarterly premiums were expected to be paid. It was in contemplation of the parties that there would be such payments for a long period of years, and it was to avoid the very confusion which would arise if appellant's contention was sustained that they agreed that there should be a definite, fixed date for the payment of these premiums.

"That such agreement is valid and binding is shown by the majority of text-writers and the decisions of the courts."

The appellant places strong reliance upon the case of *Davis v. Home Ins. Co., supra,* and the case of *Stinchcombe v. Ins. Co.,* 46 Or., 316, 80 P., 213. Mr. Justice Bonham drew an excellent distinction between the *Davis case* and the *Cantey case,* which distinction is at once apparent in the instant case. In the *Stinchcombe case* the application for insurance was made on May 5, 1894, the policy issued on July 10, 1894, and delivered July 24, 1894, on which date the premium was paid. The date for payment of future premiums was fixed in the policy as May 5th, the anniversary of the date of the application, not the date the policy was issued, to wit, July 10, 1894. The Oregon Court held that the policy became effective and binding the date the policy was delivered, July 24, 1894. Mr. Justice Cothran, now deceased, quoted with approval the *Stinchcombe case* in writing the opinion in the *Davis case,* but his construction thereof is somewhat ambiguous as he held that: "The [Oregon]

court held that, notwithstanding the apparent provisions of the policy fixing May 5th as the annual date of payment, the term began on July 24, 1894, *when the policy was issued,* and ended two years from that date." (Italics ours.) The policy was issued July 10, 1894, not July 24, 1894, and to hold that the term began the date of issue would be in conformity with the opinion of this Court.

As against the *Stinchcombe case,* there are numerous cases holding otherwise, the logic of which cases, in the opinion of this Court, are more conducive to the ends of justice.

In the case of *Mougey v. Union Central Life Ins. Co.,* 123 Ohio St., 595, 176 N. E., 455, 456, cited in 80 A. L. R., 959, on August 14, 1925, the insured applied for a policy, which was executed on September 2, 1925, delivered November 2, 1925, the policy stating that future premiums were payable on August 17 of each year. In holding the date named in the policy to prevail over the date of delivery, the Court said: "When a policy is issued and accepted, containing a definite time for future premium payments, the parties to the policy contract can thereby determine when the period of lapse may ensue. If that period for payment be indefinite, depending upon the time of delivery and acceptance of the policy, or upon some outside arrangement entered into by the parties, it might prove to be a source of litigation; at any rate, it would effectively destroy the plain provision in policy contracts such as we have here."

From the case of *Wilkie v. New York Life Ins. Co., supra,* the following portion of the Court's opinion is applicable: "But the policy further provides that the insurance will continue automatically for two years and two months from the date to which premiums have been duly paid. This necessarily means the date when the premium which has not been paid fell due by the terms of the contract of insurance. The policy designates November 22d as the day of payment. There can be no mistake as to this being the fact. By what rule of construction, applicable to any kind of instrument—will, deed, or contract—can we change that date and sub-

stitute another later in the year, simply because the policy was delivered and the premium paid on the latter date? That would be making a contract for the parties, which we are forbidden to do, and not merely construing one they have made for themselves. The intention of the parties must be collected from the whole instrument, and not from any detached portion of it, and greater regard is to be paid to their clear intent than to any particular form of words or to the phraseology by which they have undertaken to express it. Clark on Contracts (2d Ed.), pp. 402, 403, *et seq.* It is true that words in a contract are to be construed against the party using them, if there is any ambiguity, and this rule applies with special force to insurance policies which will receive that interpretation, in cases of doubt, which is most favorable to the assured. *Bray v. Insurance Co.,* 139 N. C., 390, 51 S. E., 922. But all instruments should be construed reasonably, and, where the intention of the parties clearly appears, a contract will be interpreted so as to effectuate it. We are of the opinion, after a careful examination of the terms of this policy, that it was intended that the second premium should be paid on November 22, 1902, and the others in succession on the same date of each year thereafter until the full accumulation period of 20 years had expired. Any other construction would annul plainly expressed provisions of the contract, subvert the leading idea of the parties in making the agreement, and destroy the computation adopted for adjusting and settling the rights and benefits accruing to the assured at the time unmistakably fixed by the policy. We find that there are many decisions sustaining our view, a few of which we will cite. *Tibbits v. Insurance Co.,* 159 Ind., 671, 65 N. E., 1033; *Thomas v. Insurance Co.,* 142 Cal., 79, 75 P., 665; *Johnson v. Insurance Co.,* 143 F., 950, 75 C. C. A., 22; *Frazier v. Lloyd Mfg. Co.,* 98 Minn., 484, 108 N. W., 819; *Methvin v. Life Ass'n,* 129 Cal., 251, 61 P., 1112; *McConnell v. Provident Savings Soc.,* 92 F., 769, 34 C. C. A., 663; *American Insurance Company v. Patterson,* 28 Ind., 17."

The appellant contends that the application, as a part of the insurance contract, provides the policy shall not take effect until delivered and premium paid, which provision is controlling over the date fixed in the policy. In dealing with this point we again quote and approve the pertinent portions of Judge Oxner's order, which follows:

"It is argued by the plaintiff that inasmuch as it is provided by the terms of the application that the policy of insurance shall not become effective until it is delivered to the insured and the first premium paid and that such policy was not delivered nor the premium paid until March 22, 1927, the insured has paid for protection he did not receive. A sufficient answer to this contention is that the parties are bound by the terms of their contract. But on the other hand the equities do not deal so harshly with the insured. February 10th was made the anniversary of the policy in each year and on this day the dividends were declared and made available to the insured, and moreover beginning the policy year on February 10th resulted in a quicker acceleration of the policy values and of its very maturity. It also became incontestable within a shorter time after its delivery, which is a consideration of no slight import.

"The application does provide that the proposed policy shall not take effect unless and until delivered to and received by the insured during his continuance in good health and unless and until the first premium shall have been paid, but there is nothing in the policy negativing the fact that when these conditions have been complied with that the contract took effect as of its date of issue. The policy clearly provides that it is issued in consideration of the application and of the payment of the first premium and of the payment of a like amount on the 10th day of May, August, November, and February thereafter until the death of the insured. The policy further provides that the share of the divisible surplus accruing thereunder shall be allotted as a dividend *annually on each anniversary of its date, the first such divi-*

dend being payable only if any premium due on the first anniversary be duly paid.

"It is also provided that if at any time either the reserve for any dividend additions, or any accumulated dividend deposits, or both together, shall equal or exceed the present value of the future net premiums under the policy, the company will, at the insured's election, change the policy to a paid-up participating policy, or if such dividend additions and deposits equal or exceed the face amount of the policy the company will, upon its surrender, pay its face plus such excess. It also carries provisions permitting change to other forms of policy, the granting of loans, the determination of the cash value and the options available on lapse. The whole plan of insurance and the determination of values thereunder was based upon and calculated from the anniversary date of the policy, which was February 10th in each year. There is nothing in the policy to indicate or to give countenance to the assumption that such values are to be computed as of the anniversary date of the delivery of the policy. It would have been wholly impracticable to let the determination of the policy values depend upon the date of the delivery because this date would never be ascertainable and may vary according to many circumstances. It was necessary and proper that the parties should agree upon a date on which the premiums would fall due and from which all values should be calculated, and in the instant case this agreement was made in precise language, leaving no room for conjecture or speculation."

In support thereof will be found numerous cases annotated in 6 A. L. R., 780 and 80 A. L. R., 962. The consensus of the opinions of these cases is that although the application recites that the insurance could not take effect unless the policy should be delivered and received by the applicant and the first premium paid, that if the policy expressly stipulates the date on which the premiums are to be paid, that date must control, regardless of the date on which the delivery was actually made. A pertinent portion of the opinion in the

case of *Sellars v. Continental Life Ins. Co.*, 1929, 4 Cir., 30 F. (2d), 42, 44, is quoted: "It is the custom of life insurance companies, and we think a universal custom, to issue from their home offices policies which are complete in all of their details, and to set forth in such policies the dates upon which they are issued. This date is of importance to both the company and the insured as fixing definitely the date upon which premiums are to be paid and with respect to which rights under the policy are to be calculated; and it is of the greatest importance to both that this date be not left open to any doubt or conjecture."

The inception of the term of extended insurance was from the anniversary of the date fixed for payment of premiums in the policy and not the anniversary of the date of delivery. Consequently, the date of the death of the insured, March 4, 1932, was not within the term of the extended insurance.

The respondent, in due time, served notice of intention to ask affirmance of the order of direction of verdict and judgment on additional grounds, which, in view of the foregoing opinion, are unnecessary to pass upon.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.